TUTT v. PORT ROYAL AND AUGUSTA RAILWAY COMPANY.

1. A demurrer upon the ground that the complaint does not state facts sufficient to constitute a cause of action admits all the relevant facts well pleaded, but not conclusions of law. The construction and effect of written papers, and allegations that the defendant "is wrongfully in possession," and that plaintiff "is entitled to the immediate possession of the premises," are conclusions of law not admitted by the demurrer.

2. A railroad corporation takes a right of way over lands under its charter, in the mode prescribed by law—when, therefore, it takes a deed therefor from the land owner, the right is exercised under the charter, and the deed is only the mode by which that right is taken into possession.

3. Where land was held by a trustee for the use of A for life, and then for others, with large powers of control vested in A, and A granted to a corporation a right of way across said land for its railroad track, the trustee, sixteen years afterwards upon the death of A, cannot recover the land (1) because A was "owner" of the land within the meaning of the statute, and as such owner had given consent; and (2) because if the trustee was the "owner," he has lost his right to compensation by lapse of time and the statute of limitations.

Before WITHERSPOON, J., Aiken, September, 1886.

The complaint was as follows:

The complaint of the above named plaintiffs respectfully shows unto this court:

1. That the defendants are a body politic and corporate, by and under the laws of the State of South Carolina, and doing business in the county aforesaid.

2. That the said C. G. Tutt, as trustee aforesaid, is seized in fee simple of the following described premises, to wit, all that strip or parcel of land situate in the State and county aforesaid, measuring twenty-seven hundred and twenty feet, more or less, in length, by two hundred feet in width, the same being a part of all that plantation in the county aforesaid in Beech Island, and containing two hundred and thirty acres, bordering on the Savannah River, and known as the Cook place, and the plaintiff, Helena H. M. Cook, is entitled to the immediate possession of said tract of land and is therefore a necessary party to this action.

3. That the plaintiff's title to the said strip of land is derived from a deed of indenture between John Miller and George W. Miller, dated January 1, 1849, a copy whereof is hereto annexed, marked exhibit "A," and hereby declared a part of this complaint. That the plaintiff, C. G. Tutt, on September 17, 1878, was substituted as trustee under said deed, in place and stead of George W. Miller in accordance with the provisions of said deed.

4. That under the terms of said deed, within certain restrictions therein mentioned, Horatio R. Cook, the husband of the plaintiff, Helena H. M. Cook, was entitled to the possession of said tract of land during his life, and upon the death of the said Horatio R. Cook, the said Helena H. M. Cook (being sole and unmarried) became entitled to the possession of the said premises.

5. That on or about the              day of              1885, the said Horatio R. Cook died, and the said Helena H. M. Cook is now unmarried.

6. That on or about April 23, 1870, the Port Royal Railroad Company, claiming to act under authority of a pretended deed to said company, (a copy of which pretended deed is hereto annexed, marked "B," and hereby declared a part of this complaint,) entered upon said plantation or tract of land and took possession of the strip of land above described, and did soon thereafter dig up the soil, making large excavations and embankments upon the same, and did render the said strip of land wholly unfit for agricultural purposes or pasturage.

7. That the defendants herein claiming as purchasers of an alleged interest of the Port Royal Railroad Company, in said strip of land, are now wrongfully in possession thereof, and withhold the same from the plaintiff, though demand has been made therefor, and are continuing to maintain a railroad track thereon, and are committing great damage to the same and the plantation, of which said strip is a part, by maintaining said excavation and embankment, and by digging up and excavating from the same, large quantities of earth, and thus rendering said premises unfit for agricultural purposes, and also by obstructing roads leading across the same through the remainder of said plantation.

Wherefore the plaintiff demands judgment: 1. That the fee in such premises be adjudged to be in the plaintiff, C. G. Tutt,

as trustee, as aforesaid, and for the recovery of the possession of said strip of land for the use of the said Helena H. M. Cook, according to her rights under said trust deed. 2. For the sum of twenty-five hundred dollars, damages to said trust estate. 3. For such other relief as may be just and proper, and the costs.

Exhibit A was a deed of indenture whereby the land described was conveyed to George W. Miller.

"In trust for the joint use, support, maintenance, and comfort of the said Helena H. M., and her husband the said Horatio R. Cook *and their children*, during the joint lives of them, the said Helena H. M. and Horatio R. And in the event of the said Helena H. M. surviving the said Horatio R., having a child or children in life at the death of the said Horatio R., then in trust for the joint use, support, comfort, and maintenance of the said Helena H. M. and her child or children during her natural life, and at her death to be equally divided, share and share alike, among her children surviving her, and the children of such as may die before her, *per stirpes*. And in the event of the said Helena H. M. surviving the said Horatio R., without child or children living at his death, or in the event of her becoming childless during her widowhood, then in trust for her sole and separate use, support, maintenance, and comfort during such widowhood, and upon her subsequent marriage, in trust for the like uses and upon like limitations and conditions with those hereby created in reference to her present marriage. * * *

And upon this further trust and condition, that during the life of the said Horatio R., and until the happening of the contingency last aforesaid, the said property real and personal shall remain in the possession and under the control and management of the said Horatio R., who shall be free from accountability for the annual rents, issues, and profit thereof, *over and above the support of the family:* Provided he shall abstain from waste and destruction thereof. And, further, that if the said Helena H. M. at any time hereafter be sole and unmarried, she shall have the like possession, control, and management thereof. * * *"

Exhibit B was as follows:

Whereas the general assembly of the State aforesaid, did on the 21st day of December, in the year of our Lord one thousand eight hundred and fifty-seven, pass an act to incorporate the Port Royal Railroad Company for the purpose of establishing a communication by railroad from the waters of Port Royal Harbor, in the neighborhood of Beaufort, to some point on the Savannah River, passing near the Salkahatchie Bridge; wherein and

whereby certain powers were conferred upon the said company, and among them the power to take and hold in fee simple, lands, tenements, or hereditaments that they may find necessary as well for the site on and along which to locate, run, and establish the said railroad, as for the procuring, and from time to time readily obtaining, proper materials for constructing, repairing, grading, and sustaining the same. And whereas the said Port Royal Railroad Company find the piece, parcel, or strip of land hereinafter more particularly described, necessary for the uses and purposes of the said road:

Now, know all men by these presents, that I, H. R. Cook, of the district of Edgefield, in the State aforesaid, in consideration of the premises, and also in consideration of one dollar, to me in hand paid by the said Port Royal Railroad Company, the receipt of which I do hereby acknowledge, have granted, bargained, sold, and by these presents do grant, bargain, sell, and release unto the said Port Royal Railroad Company all that piece, parcel, or strip of land, measuring in length two thousand seven hundred and twenty feet, in width, throughout its entire length, two hundred feet, being a part and parcel of tract of land belonging to the said H. R. Cook, lying and being situated in the County of Edgefield, in the State aforesaid, through which the said railroad is to be constructed, and upon which the same is located, which said strip of land is fully and accurately delineated and described in a plat thereof and of the said railroad. Provided, nevertheless, that whenever it may become necessary for the said company to occupy a space wider than the said width of the said strip of land, to wit:      feet, by reason of cuttings and fillings, it shall and may be lawful for them to occupy as much land outside the limits of said strip as may be sufficient to deposit waste earth and to construct embankments ; and that when the lands adjacent to the said strip are under cultivation, it shall and may be lawful for me, the said H. R. Cook, my heirs and assigns, from time to time, and at all times, to cultivate the same on both sides of the said road, and as near to the track thereof as may be convenient, without obstructing the use of the same by the said company. And provided, also, that the said company shall, at all times, have the right to cut down and remove any tree or trees which, from the position or condition of it or them, may in any way endanger the track or property of the said company, notwithstanding the said tree or trees may be without the limits of the said piece, parcel, or strip of land. To have and to hold all and singular the premises, unto the said Port Royal Railroad Company, their successors and assigns forever.

Witness my hand and seal this twenty-third day of April, in the year of our Lord one thousand eight hundred and seventy.

H. R. Cook.

Signed, sealed, and delivered in the presence of
Stephen C. Millet,
W. C. Bellows.

The Circuit decree was as follows:

The allegations of *fact* in the complaint are admitted by the *demurrer*, but the allegations that defendants "are wrongfully in possession," and that Helena H. M. Cook "is entitled to possession of said premises," are *conclusious of law* to be passed upon by the court.

The cause of action herein has been *twice* before the Supreme Court, as will appear by reference to the cases of *Tutt, trustee*, v. *Port Royal & Augusta Railway Company*, 16 *S. C.*, 365, and 20 *Id.*, 110. In these cases it was decided that the *fee* of the land in dispute was in the plaintiff, C. G. Tutt, trustee, but that Horatio R. Cook, under the deed of indenture, was entitled to the possession of said premises, not under or by permission of the trustee, but under the terms of the deed; that whilst Horatio R. Cook could not convey the title, yet, by virtue of his right of possession and control of the premises, he could license defendant to use the right of way over said strip of land, and having done so, no one could object to it as long as Cook's right of possession continued. Horatio R. Cook, during his life-time, was entitled to the possession of the land, and the absolute control and management thereof, as long as he abstained from waste and destruction. It does not appear that Cook ever forfeited such rights under the deed of indenture by acts of waste and destruction.

It was contended in argument by plaintiff's counsel that as defendant claimed under the pretended deed from Horatio R. Cook to the Port Royal Railroad Company, defendant could not claim the benefit of the provisions of the act of 1868 prescribing the mode of acquiring rights of way by railroads (*Gen. Stat.*, § 1550). It will be remembered that the pretended deed from Cook to the Port Royal Railroad Company is dated April 23, 1870, *subsequent* to the act of 1868, above referred to. It was decided in

*McCrea* v. *Port Royal Railroad Company.* 3 *S. C.*, 381, that said railroad company, at the date of said pretended deed, could only acquire its rights of way under the provisions of the act of 1868. In *Verdier* v. *Port Royal Railroad Company,* 15 *S. C.*, 476, it was held that permission may be given by the *owner* to a railroad to construct its highway without receiving the previous notice prescribed by the act of 1868. In *Tompkins* v. *Railroad Company,* 21 *S. C.*, 431, in referring to the act of 1868 (*Gen. Stat.*, § 1550) the court say : "It is quite obvious that the statute does not use the term 'owner' in the sense of the holder of the legal title, but rather in the sense of one who has the control of the land."

Horatio R. Cook, being entitled under the deed of indenture to the possession, absolute control, and management of the strip of land in controversy, when he executed the paper to the Port Royal Railroad Company April 23, 1870, must be regarded under section 1550 of the General Statutes as the then owner of the land, and the pretended deed furnishes sufficient evidence of the *permission* of the owner for the railroad company to construct their track through and operate the same over said strip of land. Could this permission or license to the railroad company extend or be continued beyond the life-time of Horatio R. Cook ? In *Tompkins* v. *Railroad Company, supra,* it was held that when a railroad company constructs its road-bed over lands of another by permission of executors with power to sell, *it is not a trespasser,* and the holders of the legal title could not maintain an action (as in this case) for the recovery of the land and for damages.

The entry not being unlawful, the railroad company could only be held liable thereafter for the value of the land so occupied and for such special damages as were caused by said occupation. The complaint does not set up a separate cause of action for damages, but damages are claimed merely as incidental to the alleged right to recover possession of the strip of land.

Under the authority above cited, I conclude that the complaint herein cannot be sustained, so far as it seeks to recover the possession of the strip of land, nor can it be sustained as an action for the value of the strip of land occupied by defendant, and for

special damages caused by such occupation. It is therefore ordered and adjudged, that defendant's demurrer be sustained, and that plaintiff's complaint herein be dismissed with costs.

*Mr. G. W. Croft,* for appellant.

*Messrs. Elliott & Howe,* contra.

April 3, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was brought to recover a strip of land, on which the railroad of the defendant corporation has been constructed and is now operated, and $2,500 damages. The plaintiff, Tutt, as trustee, under what is known as the Miller deed, printed in the Brief, has heretofore brought two successive actions to recover these same premises. In the first case, commenced in June, 1879, long after the railroad "was completed" through the lands covered by the trust deed, Tutt, the trustee, had a verdict; but this court set it aside on the ground that Dr. Horatio R. Cook, the husband of the *cestui que trust,* being in possession of the land claiming it as his own, and really having almost absolute power of control under the trust deed, had executed to the defendant corporation a license to construct their road over the land, which could not be disturbed, at least during his life or until his right of possession was revoked or forfeited. See *Tutt* v. *Railroad Company,* 16 *S. C.,* 365.

The second action of the trustee, Tutt, was founded on the theory that the right of possession by Dr. Cook under the trust deed had been forfeited by abuse of his possession and committing waste, in giving to the defendant company the right of way, and to grade and turn up the soil of the trust lands in his possession ; but this court sustained the non-suit granted by the Circuit Court, upon the ground, that a trustee under a trust deed, which gives to one for life the possession and use of a tract of land, cannot during his life recover from a railroad company a strip of land granted to it by the life tenant for a road-bed until his right of possession has been adjudged forfeited, which can only be done in a case to which he is a party. See *Tutt* v. *Railroad Company,* 20 *S. C.,* 111.

In 1885, Dr. Cook, the husband of the *cestui que trust*, died, and this, the third action, is brought for the recovery of the aforesaid strip of land and damages, some sixteen years after the railroad was completed and operated upon the aforesaid right of way. The complaint alleges that the plaintiff, Tutt, as trustee, is the legal owner in fee of the premises, and exhibits the trust deed as part of the complaint; that on or about 1885, Horatio R. Cook died, and the said Helena H. M. Cook is now unmarried; that on April 23, 1870, the railroad company, claiming to act under the authority of a pretended deed of Dr. Cook, which is exhibited and made a part of the complaint, entered upon the said tract of land and took possession of the strip of land described; that the defendant corporation, claiming as purchasers of an alleged interest of the old "Port Royal Railroad Company" in said strip of land, are now wrongfully in possession thereof and withhold the same from the plaintiffs, &c., &c. (Let the complaint in full be printed in the report of the case.)

The railroad company demurred to the complaint upon the ground that it "did not state facts sufficient to constitute a cause of action," and upon argument, the Circuit Judge held that under our law as to the manner in which a railroad company may acquire the right of way, the defendant company was not unlawfully in possession of the strip of land sued for, and that an action of ejectment would not lie against the railroad company to recover it; and dismissed the complaint. From this order, the plaintiffs appeal to this court upon the following grounds:

1. Because it is submitted that a demurrer admits the allegations of the complaint, and the allegation that defendants are "wrongfully in possession," and that Helena H. M. Cook "is entitled to the immediate possession of said premises" are allegations of fact, and his honor, the presiding judge, erred in holding that such allegations are conclusions of law.

2. Because his honor erred in holding that it had been decided in this cause of action, that the fee in the land in dispute was in the plaintiff, C. G. Tutt, trustee, for it is submitted that such question has never been decided by the judgment of any court, and there is no judgment upon said question, and his honor also erred in finding such as a matter of fact, when no such fact is

mentioned in the complaint; and in deciding upon a demurrer it is submitted that the court is confined to the pleadings and cannot go outside to ascertain a fact.

3. Because from the pleadings and deeds herein referred to, it appears that H. R. Cook could only grant the right of way to the company for and during his life-time, and that upon his death the defendant had no right to the use or posession of the land in dispute.

4. Because the defendant company having entered upon and held possession under the deed of H. R. Cook, (and not under the statute,) for it is so charged in the complaint, it was error in his honor to hold that the company held under the statute. It was also error to hold that the railroad company could only acquire its right of way under the act of 1868.

5. Because his honor erred in holding that H. R. Cook had the power to grant the license for a right of way over the land in dispute for a longer period than his life. Whereas it is plain that said Cook had no authority to give such license for a longer term than his life.

7. Because his honor erred in holding that the defendants could not be held liable for special damages to the land unless such damages were set forth "in a separate cause of action for damages." Whereas it is submitted that the special damages are sufficiently set forth, and under the present practice and the law it was not necessary to so state the damages.

8. Because upon the pleadings it is submitted that the complaint does state facts sufficient to constitute a cause of action; and it was error in his honor in not so deciding, &c.

A demurrer upon the ground that the complaint does not state facts sufficient to constitute a cause of action admits all the relevant facts well pleaded, but not conclusions of law. *Wait Ann. Code,* 234. For instance, here it does admit the execution of the Miller deed of trust, and the paper signed by Dr. Cook, conveying the right of way to the defendant company, which are exhibited as parts of the complaint; but it does not admit the construction and effect claimed for these papers, which is a matter for the court, a conclusion of law. We think that the allegations that the defendant company "is wrongfully in possession,"

and that the plaintiff (H. H. M. Cook) "is entitled to the immediate possession of the said premises," are conclusions of law, indeed, the very points in contest. The statement that a fact is "unlawful" is not the statement of a fact, but a conclusion of law. An act which may or may not be right and lawful, according to the circumstances under which it may be done, is not properly averred to be unjust and unlawful by merely calling it so. The terms "fact" and "truth" are not in pleading synonymous. *Pool* v. *Railroad Company*, 23 *S. C.*, 289; *Ensign* v. *Sherman*, 14 *How. Pr.*, 439; *Lawrence* v. *Wright*, 2 *Duer*, 673; 2 *Wait Prac.*, 307.

It is contended that the defendant corporation does not hold the possession and use of its road-bed under its charter, and the general railroad law of the State, but that they received it under Cook; and upon the principle that the rights of the donee can never rise higher than those of the donor, that their right of way necessarily ended with the death of Cook. We think, as matter of law, that the company held their right of way by force of their charter granted by the State, and whether it was fixed on these lands in a legal and regular manner, must be determined by the general law upon the subject. This appears from the paper itself, signed by Dr. Cook, which recites the act of the legislature granting the charter "whereby certain powers were conferred to take and hold in fee simple lands that they may find necessary for the site on and along which to locate and establish the said railroad," &c.

It is true, that the paper executed by Cook in 1870 was in the form of a regular conveyance of the fee, but it was without seal, and as a deed could not take effect. But it would not have altered the case, if there had been a seal attached. The original charter of the company authorized the right of way to be acquired in that manner. But after this paper was signed in conformity to the charter (1871), it was held by this court in reference to this identical charter, that in condemning lands under it the company must proceed in the mode prescribed by the act of 1868. *McCrea* v. *Port Royal Railroad Company*, 3 *S. C.*, 382; and see *Sams* v. *Railroad Company*, 15 *Id.*, 487. In the case of McCrea the court say, "The right of a corporation is only in the

nature of a qualified grant, to be enjoyed on due compensation being rendered, and the mode through which the land might be taken by the company remained subject to the will and pleasure of the State. It was, at most, but a change in the remedy, and did not at all conflict with the material right accorded by the charter, which was the power of subjecting private property to the use of the road," &c.

So that it is perfectly certain that the question between these parties does not relate to the quantum of interest conveyed or not conveyed, for the right of way was already given by the State; but concerns only the mode through which the right of way was taken, and this must be determined by the provisions contained in the General Statutes (section 1550 to section 1561 inclusive), under the heading of "manner of acquiring the right of way." Taking these provisions as our guide, it is manifest that the question is not as to who has the fee simple title. The defendant corporation does not claim to be the absolute owner of the strip of land sued for, or any right therein, which is inconsistent with the fee being and remaining in Tutt, the trustee. It only claims an easement granted by the State, which, in the exercise of the right of eminent domain, gave the company the power to appropriate as a road-bed the use of so much of these lands as was necessary for that purpose, upon only one fundamental condition, viz., that the value of the land so appropriated should be paid to the owner, if required, and for want of agreement or where parties do not negotiate, the value to be fixed by commissioners. In no case, however, can this right be taken from the company, subject always to the constitutional right of the land owner to have compensation, if demanded at the proper time and in the proper manner. It seems to us, therefore, that we cannot consider this right of the company merely in the light of that of an individual, acquiring and holding land under claim of title from a grantor; but the question is whether a right of way given by the State sixteen years ago and used ever since, can now be recovered, and the track of the road broken, by one now holding lands through which it runs?

Section 1550 of the General Statutes provides that "whenever any person or corporation shall be authorized by charter to con-

struct a railway　*　*　*　in this State, such person or corporation, before entering upon any lands for the purpose of construction, shall give to the owner thereof (if he or she be *sui juris*) notice in writing, that the right of way over said lands is required for said purpose.　*　*　*　If the owner shall not within the period of thirty days signify in writing his refusal or consent, it shall be presumed that such consent is given ; and such corporation may thereupon enter upon said lands : provided that the owner of said lands may be entitled to move for an assessment of compensation," &c.　It will be observed that the word "owner" is used.　Dr. Cook was found in possession of these premises and claiming them as his own.　He gave his "consent in writing," and the railroad was constructed through the land.　Was that a compliance with the law ?　It certainly was if Cook was the "owner" in the sense of the statute.　It is not alleged that any one else, at that time, claimed to be the "owner," and it has been twice decided, that he had sufficient control over the land to make his license good during his life even against the trustee.

This court has lately had occasion to give construction to the word "owner" in this act.　It has been held that under this provision the consent of executors as to lands of the heirs or devisees was sufficient, and bound them as to the location and construction of a chartered railroad.　*Tompkins* v. *Railroad Company*, 21 *S. C.*, 420.　In delivering the judgment, Mr. Justice McIver thus expressed the view of this court : "The statute, in dealing with this subject, uses the term 'owner' of the land, and it is earnestly contended that the executors are not the 'owners' of the land ; but that, at most, they simply had a power to sell for certain purposes, while the legal title remained in the plaintiffs, who were, and are, the owners of the land.　It is quite obvious that the statute does not use the term 'owner' in the sense of the holder of the legal title, but rather in the sense of one who has the control of the land.　If a minor or other person under disability holds the legal title, the statute provides that the notices and other papers necessary in the proceedings for condemnation shall be served, not upon such minor or other person under such disability, but upon his guardian,

trustee, or committee—that is, upon the person who exercises. control over the land, even though he does not hold the legal title, and is not, in the strict sense of the term, the 'owner' of the land," &c.

Dr. Cook had as much control over the premises in question as did the executors of Tompkins. It is true, he held his possession under the Miller deed, and that the trustee cannot be said, in the strict sense of the phrase, to take under him. But considering that the question is not one of title, but rather as to the consent of the ostensible "owner," and also considering the striking fact that our law makes no provision for a second or third condemnation to correspond with possible changes of title to the land through which the right of way passes, we feel constrained to hold, that for the purpose of giving "consent" to the right of way, Dr. Cook was the "owner" of the land, and his license, executed, as it has been, by construction of the road and long use, was not revoked by his death, or limited in its effect to his life-time.

But if we take the other view, the result will be the same. If Dr. Cook was not the "owner" in the sense of the statute, who was ? Was it the trustee, Tutt, who had the legal title ? If so, when the company had graded the road through the land in 1872 he should have required compensation then, or within a reasonable time thereafter. Section 1558, General Statutes, provides that "if in any case the *owner* of any lands shall permit the person or corporation, requiring the right of way over the same, to enter upon the construction of the highway, without previous compensation, the said *owner* shall have the right, after the highway shall have been constructed, to demand compensation and to petition for an assessment of the same in the manner hereinbefore directed. Provided such petition shall be filed within twelve months after the highway shall have been completed through his or her lands." It does not appear that he (the trustee) had notice, but that may be inferred (see *Verdier* v. *Railroad Company,* 15 *S. C.,* 476), and it is expressly alleged in the complaint that the defendant corporation, about April, 1870, took possession of the strip of land above described, and did, soon thereafter, dig up the soil, &c. ; and it was seven years .

before any action was taken, and nearly fourteen years before the present proceedings were instituted. It seems to us that the statute does not contemplate a divided "ownership," or one "owner" for the present, and another for the future, making two successive condemnations necessary. And in the view that the trustee, Tutt, was, and is, the legal "owner" in the sense of the statute, he has lost his right to recover the said strip of land by lapse of time and the statute of limitations. See *Waring* v. *C. & D. R. R. Co.*, 16 *S. C.*, 416.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.