### TRIMMIER, ADMR., v. DARDEN, ADMX.

1. IMPROVEMENTS—LIFE TENANT—REMAINDERMEN.—General rule in this State is that life tenant is not entitled to compensation from remaindermen for improvements put on their lands.

2. EXECUTORS AND ADMINISTRATORS.—Here the administratrix with the will annexed had no power to make improvements on estate lands with testator's moneys.

3. CONDEMNATION.—LIFE TENANT is entitled to moneys collected for right of way, unless it clearly appears that she received the damages to the estate in remainder.

4. WRITTEN INSTRUMENT—REBUTTAL.—The evidence here does not rebut the presumption of ownership of a written instrument arising from its terms.

5. TAXES.—LIFE TENANT is only liable for taxes accruing during life tenancy.

6. ACCOUNTING.—ADMINISTRATRIX with will annexed, being also life tenant, should be allowed credit for paying account due by testator, by crediting same on account due to her for rents.

Before GAGE, J., Spartanburg, January, 1900.    Modified.

Action for accounting by T. R. Trimmier, administrator *de bonis non,* with the will annexed of F. M. Trimmier, against Belle Darden, administratrix *de bonis non,* of M. L. Trimmier. The following is the Circuit decree:

"This is a suit for an accounting. The cause comes be-

fore me on exceptions, by both sides, to the master's report. The exceptions of plaintiff are numerous, those of defendant only two or three.

"The primary estate involved is that of F. M. Trimmier, who died testate in August, 1888, possessed of a large property. His sister, Margaret L. Trimmier, qualified as administratrix of the estate, with will annexed, November, 1888. Margaret L. Trimmier was also a life tenant, under the will, of all the estate of F. M. Trimmier. She died intestate in 1897. One T. J. Trimmier administered on her estate, and he died in March, 1898. Now T. R. Trimmier is administrator of the estate of F. M. Trimmier, and Belle Darden is administratrix of the estate of Margaret L. Trimmier; and what is sought is a settlement of accounts betwixt the estate of Frank M. Trimmier and his sister and administratrix, Margaret L. Trimmier. The testimony covers a wide range, and raises issues not indicated by the pleadings; but no objection has been made on that ground. The master has not made up an itemized statement of the account. He has taken for a basis the four returns made by the administratrix, Margaret L. Trimmier, in the probate court, and has added to and subtracted therefrom. He has made a general statement of the amounts received and the amounts paid out for the nine years from 1888 to 1897, and endorsed therein the items added and items subtracted, and the result thereof is a balance of $2,486.18 due to Margaret L. Trimmier's estate on 22 June, 1899. The plaintiff's major exceptions are three:

"(1). Error in striking off the account, as a charge against the administratrix, an aggregate sum of $5,523.11, made up of twenty-six items, and characterized as *rents* for 1888.

"(2). Error in retaining on the account, as a credit for the administratrix, an aggregate sum of $2,337.16, made up of seven items, and characterized as permanent improvements on real estate. And of a kindred character: Error in adding to the account, as a credit for the administratrix, an

aggregate sum of $745, and characterized as permanent improvements on a building called the Biber building.

"(3). Error in striking off the account, as a charge against the administratrix, an aggregate sum of $2,919.45, made up of two items, and characterized as rent received from Charles Petty on the Biber building, sometimes called Spartan building. And of a kindred character: Error in adding to the account, as a credit for the administratrix, an aggregate sum of $4,505.26, made up of one item, and characterized as interest on the purchase money of the Spartan newspaper sale, from 1878 or 1879 to the death of Margaret, in 1897.

"The plaintiff makes two minor exceptions, to wit:

"(1). Error in retaining in the account an item characterized as wages of E. T. Lawson for 1888, the amount not indicated, but assumed to be $535.11.

"(2). Error in adding in the account an item of $470, and characterized as the price of a gin and press on the Winsmith place.

"The exception which refers to a fee of $100 paid to Mr. C. P. Sanders was withdrawn.

"The defendant excepts on three grounds:

"(1). Error in adding to the account, as a charge against administratrix, an item of $545, and characterized as the price of the right of way over lands of F. M. Trimmier.

"(2). Error in striking off the account, as a credit for the administratrix, sundry items—four in number—aggregating $493.81, and characterized as taxes for 1888.

"(3). Error in not adding to the account, as a credit for the administratrix, an item of $306.50 paid to Charles Petty by M. L. Trimmier, for advertising by Petty for F. M. Trimmier in his lifetime.

"And now for the consideration of these matters of controversy in the order stated: If the twenty-six items of 'rent' were crops cultivated by F. M. Trimmier on his lands, then, under the statute, these crops belonged to his estate, for administration, as other quick assets. If these items were

debts to be due to him by tenants, and unevidenced by notes, liens or other obligation in equity, then they descended to the life tenant, Miss Margaret L. Trimmier, along with the land. The testimony does not reveal the character of these items, and did not, therefore, warrant the master's findings. The final determination of the right to these moneys ought not, however, be left to conjecture; the right ought to be determined according to the fact. That question is, therefore, recommitted to the master, to take further testimony, and find the matter in accordance with the rule in *Huff* v. *Latimer,* 33 S. C., 255.

"I approve the findings of the master with reference to improvements of a permanent character. No general rule can be laid down for the government of every case. Each case must be determined according to the facts of it, and to execute justice. The common rule of law and of reason is, that he who expends his means on the land of another, with his eyes open, cannot of right demand reimbursement therefor. But to the rule there are numerous limitations. In a court of equity the inquiry in every case is not so much what is the rule, as what is right. In the case at bar, Margaret L. Trimmier was sister of Frank M. Trimmier; the estate was a handsome one; Margaret L. was life tenant, and manifestly the chief object of the testator's bounty; the estate had vacant lots and houses in need of constant repair; the administratrix had large funds in her hands. The administratrix had the counsel of a gentleman of singular good judgment. The improvements benefited not the life tenant alone, but the remaindermen as well. If the administratrix expended her money on the land, and if an additional value has thereby been imparted to it, the administratrix, under the circumstances of this case, ought to have compensation therefor. *Palmer* v. *Miller,* Chev. E., 62.

"The right or equity of the estate of Margaret L. Trimmier to have compensation for improvements on the Biber building is more difficult. That claim amounts to $745, and is made for remodeling a brick building on Morgan square,

now called the Biber building, and formerly called the Spartan building. I am satisfied, from the testimony, that the building has been permanently and markedly improved, and that the cost thereof is reasonable. But Margaret L. Trimmier came by that property in this way: it was conveyed to her by deed in 1871, by Frank M. Trimmier, and along with it several other parcels of land. The deed carried only a life estate to Margaret, and remainder over. The returns of Margaret L. Trimmier do not show that she claimed to be reimbursed for the improvements to this property; that item has been added to her account by the master. The control and management of that property had no connection with the administration of the estate of Frank M. Trimmier. It is a bald case of a life tenant improving property at her own risk, and with full knowledge of her limited title. There is no equity to demand recompense, and I cannot allow it.

"Another matter of great difficulty grows out of the Spartan building transfer. . Frank M. Trimmier was the owner, not only of the building and lot, but of a newspaper published therein, called the 'Spartan.' The deed of 1871, hereinbefore referred to, conveyed the newspaper, along with the house and lot, to Margaret L. Trimmier. In December, 1878, the newspaper was sold to Charles Petty for $3,500, on credit. He began its publication January, 1879, and at that time also became tenant of the Spartan building, at a rental of $20 per month. It is not clear how much Mr. Petty paid on the purchase price of the paper, when he paid it, and how he paid it. It is clear he paid no rent up to the 2d of March, 1887, except what he paid by advertisements for Trimmier. The note and mortgage from Petty to Frank M. Trimmier, held now as part of Trimmier's estate, embraces balances for rent of building and purchase price of paper, up to 2d March, 1887. On 2d March, 1887, Mr. Trimmier and Mr. Petty happily had a settlement, the memorandum sheets of which are in evidence. It appears therefrom, that on that day Petty owed Trimmier seven years' rent, and interest thereon, aggregating $2,032.80; that

Trimmier owed Petty an account amounting to $301.68; that a balance was then struck for rent due by Petty of $1,731.12. It appears therefrom, also, that there was then due by Petty, for the purchase price of the newspaper, the aggregate sum of $2,299.75. On 2 March, 1887, seventeen months before Frank M. Trimmier died, Petty owed somebody the following sums of money, to wit: Rent of building seven years, $2,032.80; balance purchase price newspaper, $2,299.75—$4,332.55. The important question is, to whom was this money rightly belonging? It does not appear what became of the rent of the Spartan building from 1871 to 1879; but no claim is made here for it. It does not appear what became of the payments made by Petty on the purchase price of the Spartan newspaper. The presumption in each case is, that if paid to Frank M. Trimmier, he accounted for the same to the owner. It is manifest the sums above stated were not paid, to wit: $2,032.80 (except a small sum by offset, amounting to $301.68,) and $2,299.75. The memorandum and the testimony of Charles Petty, makes that plain. There is no question the rent belonged to Margaret L. Trimmier, for the real property was hers for her life. When Margaret L. Trimmier qualified as administratrix, in November, 1888, and had funds in her hands, the debt due to her for rent was paid. There can be no question but that Margaret L. Trimmier was owner of a life estate in the newspaper, the 'Spartan.' But when that paper was sold to Mr. Petty for $3,500, in December, 1878, and the note therefor taken in Frank M. Trimmier's name, did Margaret L. become entitled to a life estate in the note? I must infer the sale was made by consent of the life tenant, and I conclude, also, the note stood for the newspaper. But on 2d March, 1887, there was due by Petty only $1,532 thereon, and six years' interest, to wit: $2,299.75 (see second sheet memo., above referred to). It is manifest, therefore, that Petty had paid in some way about $2,000 of the purchase price of the paper. The testimony of Mr. Petty on this point ought to have been specific, but it was not. It is left,

15—61

therefore, to conjecture from the written memorandum. Shall Margaret L. be entitled to demand interest on the $2,000, settled in Frank M. Trimmier's lifetime, and interest on the $1,500 due at his death? I must assume that the sums paid by Petty were paid to those entitled thereto, and that Margaret L., therefore, received her share of the $2,000 by some settlement with Frank M. As to the balance due by Mr. Petty of $2,299.75, Margaret L., is entitled to have the interest thereon, credited yearly from 2d March, 1887, to her death, when her estate therein ended by limitation. She can have no more than this. It was argued with great force by the attorney for plaintiff that Frank M. Trimmier must be presumed to have paid to Margaret L. in his lifetime the rents due to her, and interest on purchase price of the newspaper. But the written memorandum made by Frank M. Trimmier and by T. R. Trimmier, his clerk, fixes the entire transaction, and is conclusive to my mind. It is true, Margaret L. did not claim these items in her returns, but that is not conclusive against her.

"The plaintiff's exception as to the wages of E. T. Lawson is not sustained or overruled; that matter is remanded to the master, to be determined along with the matter of rents, already referred back.

"The ruling of the master, by which he allows Margaret L. credit for $470, the price of a gin and press on the Winsmith place, is modified. She is entitled to credit for the value of the gin, etc., at the time of her death, but no more.

"The defendant's first exception is sustained. A right of way is not divisible into a life estate and remainder. It does not involve the fee or partake of the fictitious entity called title.

"The defendant's exception about taxes for 1888 is overruled; the life tenant was liable for taxes. The exception touching the item of $306.50, which was due by Frank M. Trimmier to Charles Petty, has already been passed upon; it belonged of right to Margaret L.

"The cause is remanded to the master, to take testimony

and report on the issues referred back, and to report in accordance with his conclusions thereon, and pursuant to the findings herein."

From this decree both parties appeal.

*Mr. J. T. Johnson,* for plaintiff, cites : *Error to allow defendant's intestate to pay out of personal estate of F. M. Trimmier the sums expended in permanent improvements on real estate devised to her for life:* 1 Hill Eq., 370; 2 Hill Eq., 217; 2 Rich. Eq., 317; Chev. Eq., 213; McM. Eq., 75, 78; 5 Rich. Eq., 315.

*Messrs. Nicholls & Jones,* for defendant, cite : *It is right to allow administratrix to invest estate money in lands:* 2 Hill Ch., 217. *Life tenant properly allowed to retain damages for right of way:* Rev. Stat., 1743; 21 S. C., 423; 59 S. C., 371. *The statute of limitations does not begin to run in favor of a trustee until he does something to violate the trust or terminate the relation:* 1 Hill Ch., 62; Dud. Eq., 112; Hill Ch., 228; 12 S. C., 185.

July 23, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. In order to understand fully the facts of this case, it will be necessary to refer to the decree of his Honor, Judge Gage. The record contains the following general statement: "This action was begun in the Court of Common Pleas for Spartanburg County by the plaintiff, appellant, respondent, against defendant, appellant, respondent, April 15, 1898, for a settlement and accounting between the estates of F. M. Trimmier and M. L. Trimmier, arising from the administration of F. M. Trimmier's estate by M. L. Trimmier, as administratrix, with the will annexed, of F. M. Trimmier, from 1888 to 1897. The cause was referred to the master to hear and determine all the issues. The master made his report, and the same came on to be heard on exceptions thereto by his Honor, Judge Gage.

Judge Gage modified the master's report and referred certain questions back to the master for further testimony and determination. On the coming in of the master's second report, there being no exceptions thereto, the same was confirmed by Judge Klugh. Both plaintiff and defendant appeal from the decree of Judge Gage. The counsel in the case entered into written agreement on the filing of Judge Gage's decree to await the determination of the matter then left open in order that all questions might be presented in one appeal. There being no appeal from Judge Klugh's order, the appeal is from Judge Gage's decree."

The issues are thus stated by the defendant's attorneys:

"1. The estate of Frank Trimmier consisted in part of money seeking investments, and in two lots in Spartanburg city, known as the New York Store and the Red House, which were not remunerative. In all this property Margaret L. owned a life interest, and was also her brother's administratrix. She invested some of the money in improving these lots. Both the master and Circuit Judge find that these improvements were judicious, permanent and allowable. In addition thereto, she expended about $700 in repairs, which were not allowed. Plaintiff appeals from the allowance of the permanent improvements.

"2. In addition to the life estate in these buildings, held under the will, Margaret also held a similar estate by deed from Frank Trimmier in the Spartan building, with reversion to the same devises. She made similar improvements on this property, which were allowed by the master but excluded by the Circuit Judge. Defendant appeals.

"3. During her life tenancy a railroad right of way was condemned over lands which she owned as a life tenant, and she received $531 damages therefor. The Circuit Judge held that she was entitled to hold this as her own. The plaintiff excepts, and claims that she is entitled to only the interest thereon during her life.

"4. After deeding to Margaret L. a life interest in the Spartan building, he rented it to Capt. Petty, and several

years after, he took Petty's note in his own name for arrears of rent, and also paid Petty an account of $301.68 out of said rents. The master and Circuit Judge held that he should account for this to Margaret L., the life tenant. Plaintiff appeals.

"5. He also deeded to her a life interest in the Spartan newspaper. He afterwards sold it (with her consent) to Petty, and took the notes for the purchase price in his own name, and collected part of the purchase price. The master finds that Frank's estate is liable for the interest on the purchase price of the paper, and the Circuit Court finds that she was entitled to the interest in the said notes. The plaintiff appeals on the ground that Frank's estate owes her nothing on this account. The defendant appeals on the ground that the Circuit Judge made a mistake in his method of calculating the interest which he had found was due.

"6. The master and Circuit Judge neglected to allow Margaret L. $306.50 paid by her as administratrix for advertising for her testator. Defendant appeals.

"7. They also failed to allow her credit for taxes charged against Frank Trimmier in his lifetime, and paid by her as administratrix. Defendant appeals. We think these last two items were an oversight."

The plaintiff's exceptions are as follows:

"I. Because his Honor erred in finding as a fact that these improvements were permanent and judicious, and erred in allowing the estate of M. L. Trimmier the following as proper credits and disbursements: 1895—April 13, paid W. A. Mistler, permanent improvements on N. Y. Store and Red House, $14.95. April 20, paid Geo. Sanders, building chimney and pillars, $20.50. May 11, paid H. J. Solesby, remodeling Red House, $576.83. May 28, paid W. A. Mistler, putting tin roof on N. Y. and Floyd Liles stores, $559.28. 1896—June 22, paid J. P. Hertzog, rebuilding Liles store, $610. May 11, paid W. A. Mistler, for pipes and guttering, $10.60. (a) It is respectfully submitted that said improvements were made to increase her own in-

come as life tenant, and not for the benefit of the remainder-men, and his Honor erred in not so holding. (b) It is respectfully submitted that as life tenant it was her duty to keep the real estate in ordinary and reasonable repair at her own expense; and if she made more than ordinary repairs, she did it for her own benefit and at her own peril, and his Honor erred in not so holding (c) It is respectfully submitted that the fact that Miss Margaret L. Trimmier, as administratrix, had large sums of the estate's money in her hands, gave her no warrant in expending such money, or any part thereof, upon real estate, in order to increase her own income, even though the succeeding life tenant may be incidently benefited, and his Honor erred in not so holding.

"II. Because his Honor erred in allowing Miss Margaret L. Trimmier to retain as her own and absolutely, the money paid her in condemnation proceedings for right of way over land of F. M. Trimmier, it being respectfully submitted that he should have held that as life tenant she could have the use of the money for life without interest, and at her death the money should go to the remainderman, just as the land itself would do.

"III. Because his Honor erred in finding as a matter of fact that F. M. Trimmier owed his sister, M. L. Trimmier, anything on account of the rents of the Spartan or Biber building, it being respectfully submitted that the evidence showed no such indebtedness, and his Honor erred in not so finding.

"IV. Because his Honor erred in finding as matter of fact that F. M. Trimmier owed M. L. Trimmier any sum whatever on account of sale of the Spartan newspaper, it being respectfully submitted that the evidence did not justify such finding, and his Honor erred in not so holding.

"V. Because his Honor erred in not finding and holding that any and all claims arising from the rent of the Spartan building and the sale of the Spartan newspaper, or either of them, was barred by statute of limitation and laches of defendant's intestate."

The defendant's exceptions are as follows:

"I. Because his Honor, the presiding Judge, in considering permanent improvements made by Margaret L. Trimmier on the Spartan or Biber building, erred in finding that her estate in said property differed materially from the estate she held in other property on which she made improvements, and for which she was properly allowed credit; and in not finding that the only difference in the estate was that she held the Spartan or Biber building by deed without remainder over, and she held the other realty by will, with remainder to the remaindermen, and that there was no substantial difference therein, and that he erred in holding that 'this was a bald case of a life tenant improving property at her own risk, with a full knowledge of her limited title;' and in not finding that she made said permanent improvements just as she did on the other property, and should have like protection therefor; and that his Honor erred in finding and holding that 'there is no equity to demand compensation,' and in refusing to allow the same.

"II. That his Honor, after finding that Margaret L. had a life interest in the note given by Petty for the Spartan newspaper, and that there was due thereon a balance of $1,532, which was principal, and six years' interest ($767.75) from March 2, 1881, amounting to $2,299.75, erred in allowing her only the interest on said $2,299.75 to be credited yearly from the 2d of March, 1887, to her death. The error being that this balance of $2,299.75 embraced both principal and accrued interest from 1881 to 1887, which interest belonged to Margaret L.; and his Honor erred in giving this interest to Frank M., and in allowing to Margaret L. the interest in her said interest; whereas the estate of Frank should receive at the death of the life tenant only the principal ($1,532) and Margaret should receive credit for all the interest gained by the Petty note from March 2, 1881, until her death, which was seven per cent. compound interest, as shown by Frank M. Trimmier's calculation.

"III. That his Honor, after finding that 'Capt. Petty paid,

in some way, about $2,000 of the purchase price of the paper in Frank M. Trimmier's lifetime' (before March 2, 1881), and that he assumes that the sums paid by Petty were paid to those entitled thereto, erred in finding that 'Margaret L., therefore, received her share of the $2,000 by some settlement with Frank M.,' and in not allowing her anything further on said sum so paid by Petty. The error being in not holding, as he had already found, that the note had been taken in the name of Frank M. Trimmier and belonged to him, except that Margaret L. had a life estate therein, to wit: the interest on the note; that when Petty paid the $2,000 of purchase money, Frank M., as the holder and owner of said note, received and retained it as his own; but that he became liable to Margaret L. for the interest on the amount so received from the time he received it (March 2, 1881,) until her death, on May 4th, 1897.

"IV. That his Honor erred in finding that the amount paid by Petty in Frank's lifetime was about $2,000, when he should have held that at least $2,511 was paid prior to March 2, 1881, of which $1,958 was principal and $543 was interest, belonging to Margaret L.; and that his Honor erred in not allowing her credit for the said interest, with interest thereon from the date it was paid (March 2, 1881,) until her death, May 4th, 1897.

"V. That his Honor erred in assuming that there had been any settlement between Frank M. and Margaret L., when there was no evidence of such settlement, nor when it was made.

"VI. Or, in other words, that his Honor erred in not allowing to Margaret L. Trimmier, as life tenant in the Petty note, all the interest that he actually paid thereon; and when he paid part of the principal to Frank M. and thereby stopped the interest on amount so paid, in not allowing her interest on the said amount in the hands of Frank M. from the time he received same until her death.

"VII. Or, if this cannot be allowed, that his Honor erred in not finding that she was at least entitled to simple interest

on the purchase price of the paper from the time it was sold until her death.

"VIII. That his Honor erred in overruling the 'defendant's exception about taxes for 1888,' and holding that Margarent L. Trimmier was liable as life tenant for taxes which accrued against Frank M. Trimmier during his lifetime; and in not holding that a life tenant is liable only for taxes which accrued during said life tenancy.

"IX. That his Honor erred in confusing the item of $301.68, paid for advertising by Captain Trimmier in his lifetime by credit on the rent account, and the $306.50 paid by Margaret L. Trimmier on January 21, 1892, for advertising for Frank's estate, out of the rents due her by Petty; and in holding that this item of $306.50 had already been passed upon; and, after holding that 'it belonged of right to Margaret L.,' 'in not ordering that she be allowed credit for the same, and that it be added to her disbursements by the master.' "

The plaintiff's attorneys in their argument say: "The questions of law are: (1) What are the rights of the life tenant to recover from remaindermen for permanent improvements? (2) What are the rights of remaindermen in a fund collected by the life tenant in condemnation proceedings by railway to obtain right of way? (3) Then there is a mixed question of law and fact, viz: What amount, if any, is due by F. M. Trimmier's estate to Margaret L. Trimmier's estate on account of the Spartan newspaper and the Spartan building?"

We will first consider the rights of a life tenant to recover from remainderman for permanent improvements. In *Corbett* v. *Laurens,* 5 Rich. Eq., 301, Chancellor Wardlaw, in behalf of the Court, says: "The equity of a tenant for life against remaindermen for the benefit of his improvements is inferior to that of a tenant in common in like case. The tenant for life is exclusively entitled to the enjoyment of the estate for an indefinite term of time, as measured by the calendar, always long in his anticipation;

and as to him the inference is more natural that he intends
his improvements for his personal use.　He is not interested
in the inheritance, and has little pretension to anticipate the
interests or the wishes of his successors.　He is an implied
trustee for the remaindermen, and by general rule in equity
trustees are not entitled to the profits of their management of
the trust estate.　His estate is not unfrequently given rather
for the preservation of the rights of the remaindermen than
for his own enjoyment.　Where a bounty to him is clearly
intended, it is commonly no more than the enjoyment of the
estate, in the existing condition at the time of the gift, or in
a progressive condition contemplated by the donor at the time
of the gift.　Courts of equity in England, which admit this
equity as to improvements more liberally than we do between
tenants in common, have not recognized the claim of a ten-
ant for life to compensation for improvements, except in the
case where he goes on to finish improvements permanently
beneficial to the estate which were begun by the donor "
After stating that the doctrine, as limited, seems to be ap-
proved in *Ex parte Palmer*, 2 Hill Ch., 217, the Court, in
commenting on that case, says: "There an allowance was
made to an executor for improvements put by him on an un-
improved lot in the city of Charleston, which by subsequent
marriage with the widow of the testator he acquired for life;
but the general rule against such allowance to a tenant for
life is expressly stated.　This, as a general rule, is not un-
conscientious; and in cases which may seem to be proper
exceptions to its operation, as in a gift for life of wild lands
in such terms as clearly import an intended bounty to the
tenant for life, which cannot be enjoyed in the existing con-
dition of the subject, the tenant may obtain by timely appli-
cation to this Court either a sale of the whole estate, so that
he may enjoy the income, or authority to make improve-
ments permanently beneficial; and he suffers from his own
wilfulness, if he proceeded upon his own notions of improve-
ment without asking aid or advice.　The Court may sanc-
tion what it would have previously authorized, but it en-

courages no experiments upon its power of retroactive relief." The general rule firmly established in this State is, that a tenant for life who puts improvements on land is not entitled to compensation from the remaindermen. The right of a tenant for life to compensation for improvements on the land, is even inferior to that of a tenant in common in like case who is not allowed the exclusive benefit of his improvements, except "under circumstances which would make it a great and obvious hardship to be deprived of the benefit of such improvements." *Buck* v. *Martin,* 21 S. C., 590, and cases therein cited. There are no such circumstances in this case.

It is contended, however, that the money expended in the improvements belong to the estate of F. M. Trimmier, of which Margaret L. Trimmier was administratrix, and as the investment of the trust funds by her as administratrix was judicious, her estate should receive credit for such expenditures. It cannot be said that the expenditures were made by her as administratrix, for she had no such power. The will of F. M. Trimmier contains the following provisions: "Item 3. In making collections and sales of my personal assets, necessary for the payments of my debts and expenses of administration, I direct that only such assets be converted into money as are necessary for that purpose, to be selected from those which are least secured. Item 4. All the rest and residue of my personal estate, whether the same be bonds, mortgages, notes or otherwise, choses in action, goods, chattels or other personalty, I direct to be turned over in kind (that is to say, unconverted into money,) to a trustee to be appointed by the proper Court of this State; and I give and bequeath all of my personal estate (including cash unconsumed in the payment of debts and expenses of administration) unto and to the use of such trustee, his successor in office, their executors, administrators and assigns forever, to be held by him and them upon the following trusts * * *" It will thus be seen that it was made her duty to turn over in kind to the trustee therein

mentioned all the personal property of the estate, except what was consumed in the payment of debts and expenses of administration. It would have been a violation of the trust if she had invested the funds of the estate in the erection of improvements.

We will next consider what her rights were with regard to the funds received by her under the condemnation proceedings to obtain the right of way by the railway company over the land. In the record appears this statement: "It is admitted that in the condemnation proceedings over the real estate of F. M. Trimmier, deceased, leading out to the Spartan Mills, Miss M. L. Trimmier received $645, less her attorney's fee, who represented the estate in said proceedings." The record does not show that Miss Trimmier received compensation for any damages other than to her life estate. She could not be considered as holding the fund in trust unless it was shown that she received compensation not only for the damage to her life estate, but to the estate in remainder. She had the right to compensation for damage to her life estate, and could not, even if she had so desired, have deprived the remaindermen of the right to compensation allowed them by the Constitution. *Cureton* v. *Ry. Co.*, 59 S. C., 377.

We proceed to a consideration of the third question, viz: What amount, if any, is due by F. M. Trimmier's estate to Margaret L. Trimmier's estate on account of the Spartan newspaper and the Spartan building? The presumption is that an instrument of writing is what upon its face it purports to be. The mortgage executed by Petty in favor of F. M. Trimmier shows upon its face that it was the sole property of F. M. Trimmier. The administratrix of Miss Trimmier's estate contends that this presumption is rebutted by the fact that the consideration of the mortgage was the sale of the property in which she had a life estate. It must, however, be remembered that when F. M. Trimmier wanted to let it be known that his sister had an interest in certain of his property, he expressed it in writing.

Furthermore, as said by his Honor, the Circuit Judge, Miss Trimmier did not claim the said items in her returns. We do not think the presumption was rebutted.

These views dispose of all the other questions except those raised by the defendant's eighth and ninth exceptions. Sec. 220 of the Rev. Stat. shows that the eighth exception should be sustained.

The ninth exception should be sustained for the reasons therein stated.

It is the judgment of this Court, that the judgment of the Circuit Court be modified in the particulars hereinbefore mentioned.