CHARLESTON & WESTERN CAR. RY. CO. v. REYNOLDS.

1. CONDEMNATION—RIGHT OF WAY.—Entry on land for survey and location is not entry for location.
2. IBID.—IBID.—LIFE TENANT—REMAINDERMEN—LIMITATION OF ACTIONS.—Deed to railroad company by life tenant for right of way only conveys what interest he held, but no rights of remaindermen, and statute only begins to run against remaindermen at death of life tenant.

   MR. JUSTICE WOODS *thinks the cases of Tutt* v. *Ry.,* 28 S. C., 388, *and Ry.* v. *Scott,* 38 S. C., 34, *are overruled by Cureton* v. *Ry.,* 59 S. C., 371.
3. LIMITATION OF ESTATES—REMAINDERS.—Under the will here, children of life tenant *in esse* at death of testator took as contingent remaindermen.
4. CONDEMNATION—RIGHT OF WAY.—REMAINDERMEN who are minors when life tenant conveys right of way to railroad company, may have damages to their lands assessed against railroad company for such taking, after death of life tenant, and after more than one year from completion of road, by procedure in Court of Common Pleas,

31—69

if their right to compensation be denied and Court may order compensation assessed by statutory compensation method.

5 IBID.—IBID.—INJUNCTION.—When right to compensation for right of way is denied, it is proper to enjoin statutory proceeding at instance of railroad company.

6. IBID.—IBID.—REMAINDERMEN.—Compensation to be paid to remaindermen for their contingent interest in right of way conveyed by life tenant is the value of such contingent interest at time of taking, with interest.

Before Jos. A. McCULLOUGH, special Judge, Greenwood, June, 1903. Affirmed.

Action by Charleston and Western Carolina Railway Co. against J. B. Reynolds *et al.* The report of Master Moore, omitting statement of issues, is as follows:

"In this case, as I see it, there are two main questions:

"First—Are the defendants entitled to compensation?

"Second—If so, are they entitled to recover under statutory proceedings?

"There are many questions of fact to be settled before answering these questions.

"From the testimony I find the following facts: In 1882 and up to the time of his death, Bennett Reynolds was the owner in fee of the tract of land mentioned and described in the complaint as 'the McGee tract.' He died July 3, 1883, leaving a will devising the said lands to his son, B. F. Reynolds, 'to have, use and enjoy the same during said B. F. Reynolds' natural life, at his death, to his children or their children who may be living at that time.' B. F. Reynolds, the son, with some of his children, resided on said lands at the time of the death of his father and lived on the lands till he died May 30, 1901. J. B. Reynolds, Nannie R. Briggs, F. B. Reynolds, Minnie Reynolds, Eva Reynolds and W. T. Reynolds, defendants herein, were the only children of B. F. Reynolds, a son of Bennett Reynolds, and were living at the date of the death of B. F. Reynolds, the youngest of whom is now twenty-four years old, and the oldest is forty years old. The main line of the Charleston and Western Carolina Rail-

way Company runs through the said lands, but its spur track to the Grendel Mills is located on other lands than the McGee tract (barely touching the McGee tract at one point). The Greenwood, Laurens and Spartanburg Railway is now owned and operated by the Charleston and Western Carolina Railway Company as a part of its line. The said Greenwood, Laurens and Spartanburg Railway Company having been consolidated into the Port Royal and Western Carolina Railway Company, whose road was afterwards purchased by the Charleston and Western Carolina Railway Company. The Greenwood, Laurens and Spartanburg Railway Company entered the said McGee tract of land in 1882, during the lifetime of Bennett Reynolds, its owner, for the purpose of surveying and locating its road thereon. Several preliminary and location surveys out of the town of Greenwood north towards Laurens were made prior to the death of Bennett Reynolds. Two of these, at least, passed through the McGee tract of land, and a preliminary and location survey through said McGee tract of land was changed at least one time. The Greenwood, Laurens and Spartanburg Railway Company obtained no conveyance or right of way from Bennett Reynolds. In fact, the testimony shows that he was a very old man at the time—about eighty-two years old—weak in mind and incapable of attending to business. On October 13, 1883, before any work was done on construction, B. F. Reynolds (the life tenant) made a deed of conveyance of a right of way 200 feet wide through the said McGee tract of lands to the Greenwood, Laurens and Spartanburg Railway Company. Under this deed the said Greenwood, Laurens and Spartanburg Railway Company entered the said lands and constructed their road thereon. Grading was begun ten miles north of Greenwood, at the river, in October, 1883, and was not completed through the said McGee tract till the spring of 1884. No notice of entry for construction was served upon the children of B. F. Reynolds. The Greenwood, Laurens and Spartanburg Railway Company used the said right of way continuously until the said company was

consolidated into the Port Royal and Western Carolina Railway Company, whose road was afterward purchased by the Charleston and Western Carolina Railway Company. The Charleston and Western Carolina Railway Company, successors in title to the Greenwood, Laurens and Spartanburg Railway Company, now use the said right of way and have used it since their purchase. B. F. Reynolds, the life tenant, died May 30, 1901, and statutory proceedings for compensation and damages were begun October 11, 1901, by the defendants, other than Clerk Turner, as petitioners—the remaindermen—as owners in fee of the McGee tract of land, under and by virtue of the will of their grand-father, Bennett Reynolds.

"Section 2196, R. S., referring to previous sections 2187-2195, inclusive, is as follows: 'Nothing herein contained shall be construed to prevent entry upon any lands for the purposes of survey and location; and if in any case the owner of any lands shall permit the person or corporation, requiring the right of way over the same, to enter upon the construction of the highway without previous compensation, the said owner shall have the right after the highway shall have been constructed to demand compensation, and to petition for an assessment of the same in the manner hereinafter directed: *Provided,* Such petition shall be filed within twelve months after the highway shall have been completed through his or her lands.' The entry for the purpose of survey and location, in this instance, was made during the lifetime of Bennett Reynolds. The railroad company, under the above section quoted, had the right to enter for the purpose of survey and location. But Bennett Reynolds died before construction was begun, and under a deed by B. F. Reynolds (life tenant) to the railroad company for a right of way through the premises, the road was built. No notices were served on the remaindermen by the railroad company nor did the remaindermen serve any on the railroad company. Does this deed of B. F. Reynolds bind the remaindermen for a longer time than during the lifetime of B. F. Reynolds? I

think not.    Section 17, art. I., of the Constitution, provides 'that private property shall not be taken for private use, without the consent of the owner, nor for public use, without just compensation being first made therefor.'    In *Cureton v. R. R. Co.*, 59 S. C., it is said that remaindermen are such owners as fall within the protection of this provision of the Constitution.    Also, section 2465 of the Code is as follows: 'No estate remainder, whether vested or contingent, shall be defeated by any deed of feoffment with livery of seizin.'    B. F. Reynolds, it seems to me, could grant or convey no greater estate than he had, to wit: A life estate, and as in the case cited above, upon falling in of the life estate, the remaindermen could bring an action for compensation.

"I find, therefore, that the defendants, other than Clerk T. C. Turner, have the right to compensation for the strip of land through their lands used on the main line of the plaintiff's road, but no right to compensation on account of its spur track to Grendel Mills, since that track is built on lands other than the McGee tract.

"The next question is, are the defendant petitioners entitled to recover under statutory proceedings? the plaintiff having denied their right to compensation.    It seems to me that they are not.    To use the language used in *Railway Co.* v. *Ridlehuber,* 38 S. C., 313, by the late Chief Justice McIver, 'the statute seems to proceed upon the assumption either that the right to compensation has been conceded or has been already determined in some other way.'    In the same case it is held, 'that the provisions of the statute law of this State as to the right of way for railroads (Gen. Stat., secs. 1550-1561,) only govern the manner of claiming the right of way and the mode by which the amount of compensation is to be ascertained, where the right to compensation is conceded or has been already determined.    But the statute law has prescribed no mode by which the disputed right of the land owner to compensation for the land over which a railroad has been constructed can be determined.    The jury empanelled to determine the amount of compensation not

being presided over by any officer who is competent to instruct them in matters of law, are not expected to determine the right of the land owner to compensation, and on appeal from their finding, the appellate tribunal can only consider the matters passed upon by the jury.' See, also, *Auld* v. *R. R. Co.*, 42 S. C.; *Cureton* v. *R. R.*, 59 S. C., and *South Bound R. R. Co.* v. *Burton*, 63 S. C.

"Having determined herein that the defendants, other than Clerk T. C. Turner, have the right to compensation on account of the main line strip of land through their lands, used and appropriated by the plaintiff railroad company, but that the said defendants cannot recover under their statutory proceedings, it follows and I conclude: That the petitioners should be perpetually enjoined and restrained from going further under their statutory proceedings, without prejudice, however, to their right to bring an action against the Charleston and Western Carolina Railway Company for the purpose of ascertaining the amount of compensation due them by the said railroad company for the strip of land through their land—the McGee tract—used as a right of way by the said railroad company for its main line road through said lands, and for the recovery of such compensation as they are entitled to."

Both sides excepted to this report, and the Circuit Judge filed the following decree:

"The controversy here is as to the rights of the defendants, the Reynolds heirs, to compensation at the hands of the plaintiff for a certain right of way which plaintiff is now using over land of theirs known as the McGee tract of the Bennett Reynolds, Sr., estate. The facts are briefly these: Bennett Reynolds, Sr., owned the land in question. The Greenwood, Laurens and Spartanburg Railway Company, without objection on the part of the said Bennett Reynolds, Sr., went into possession of the strip of land in dispute for the purpose of surveying and locating its railroad thereon. No petition was filed by any person within twelve months

after the road was completed through the said lands.    The
said Bennett Reynolds, Sr., died on July 3, 1883, leaving a
will in which he devised the lands in question to his son, B.
F. Reynolds, 'to have, use and enjoy the same during said B.
F. Reynolds' natural life, at his death to his children or their
children who may be living at that time.'

"The work of 'constructing' the said road across the said
land was not begun until after the death of the said Bennett
Reynolds, Sr.   On October 13, 1883, the railway company
obtained from B. F. Reynolds, the life tenant, a deed whereby
the said B. F. Reynolds, in consideration of the matters
therein alleged, conveyed to the said railway company the
right of way in question, and thereupon the said railway
company entered upon the said lands and constructed its
road-bed thereon.   The plaintiff is its successor in title.   It
appears from the testimony that the road-bed was not com-
pleted through the McGee tract (being the tract in question)
until the spring of 1884.   No notice of entry for construc-
tion was served upon the children of B. F. Reynolds, the life
tenant.   The said right of way has been used continuously
ever since by the plaintiff and its predecessors in title.

"On May 30, 1901, B. F. Reynolds, the life tenant, died,
and the statutory proceedings for compensation were begun
by the defendants, other than the defendant, T. C. Turner,
clerk of the Court, on October 11, 1901—they claiming as
remaindermen under that clause of the will of Bennett Rey-
nolds, Sr., above set forth, and now as owners in fee of the
McGee tract.   His Honor, Judge Townsend, directed the
empanelling of a jury, and notice of the drawing of the jury
was duly served upon the plaintiff.   Thereupon plaintiff
instituted its action for the purpose of enjoining any further
steps under the said special proceedings, upon the grounds
that the defendants had no right or interest in the said right
of way, for the reason set forth in the complaint.   It will be
observed by referring to the allegations of the complaint that
plaintiff does not ask that the said proceedings be enjoined
upon the special ground that its liability in damages had

never been admitted or adjudicated by a court of competent
jurisdiction.    It is true, the complaint does state facts which
if true would entitle the plaintiff to the injunction prayed for,
upon the ground that the defendants now have no interest in
the said property; but, as I construe the complaint, the plain-
tiff has not alleged as a specific ground for an injunction the
fact that the defendants had no right to institute the proceed-
ings in advance of an adjudication of its legal liability by a
court of competent jurisdiction, or an admission on its part
of liability.    On the contrary, the plaintiff asks in its third
prayer of relief that in case the Court should overrule its
contention, and the complaint be dismissed upon the grounds
therein urged, 'that it may have in this action the advice and
direction of this Court given as to the manner and method
and extent in which and to which said assessment shall be
made,' etc.

"On October 18, 1901, his Honor, Judge Gage, upon
reading the verified complaint, and on motion of counsel for
the plaintiff, by an order required the defendants to show
cause before him on October 25, 1901, why a temporary
injunction should not be granted, and in the meantime en-
joining the defendants 'from proceeding further or taking
any action whatever under the proceedings referred to in the
said complaint * * * *until the final determination of the
issues in this action.'*

"By agreement of counsel there was no hearing of this
matter on October 25th, and the restraining order was con-
tinued in full force and effect until the final hearing on the
merits.

"In the meantime, by consent of counsel, a consent order
of reference was taken, referring the case to W. J. Moore,
master for Greenwood County, to take the testimony and
report his conclusions of law and fact.    In accordance with
this order, the master held references, took the testimony
found in the record, and on April 28, 1903, filed his report,
in which he fully and fairly states the facts, and says: 'In
this case, as I see it, there are two main questions: First—

Are the defendants entitled to compensation? Second—If so, are they entitled to recover under statutory proceedings?' He answers the first question in the affirmative, and the second in the negative.

"The plaintiff excepts to so much of the master's report as holds that the defendants are entitled to compensation, and the defendants except to so much as holds that they are not entitled to recover under the proceedings which they had instituted.

"Did the master err in holding that the Reynolds heirs were entitled to compensation? The railway company contends that they are not entitled to compensation for the following reasons, which I gather from the complaint:

"(a) That this property originally belonged to Bennett Reynolds, Sr.; that he was in possession at the time the Greenwood, Laurens and Spartanburg Railway Company went into possession of the strip of land in dispute for the purpose of surveying, locating and constructing its railroad thereon, and the said Bennett Reynolds, Sr., having permitted the aforesaid acts to be done, and no petition having been filed by any person within twelve months after the road was completed through the said lands, the title to the railway company thereby became perfect as against the world. There is no doubt of the fact that if Bennett Reynolds, Sr., had permitted the Greenwood, Laurens and Spartanburg Railway Company, plaintiff's predecessors in title, to go into possession of the lands in dispute for the purpose of surveying, locating and *constructing* its railroad thereon, and no petition was filed by any person within twelve months after the road was completed through the said lands, the railway company would have a good title to the said right of way. (See sec. 2196 of Rev. Stats. of 1902.) But I concur with the master in his finding of fact that the work of constructing the said road across the land in question was not begun until after the death of the said Bennett Reynolds, Sr. Under the section above quoted the railway company had the right to enter upon the said lands for the purpose of 'survey

and location,' and I find from the testimony that the acts done by the railway company during the lifetime of Bennett Reynolds, Sr., to wit: surveying and setting stakes, was only for the purpose of 'survey and location.'

"(b) The second ground urged in the complaint, as to why the defendants are not entitled to compensation, is, that after the death of the said Bennett Reynolds, Sr., for the purpose of further protecting and securing its title to the said strip of land, the railway company took a deed from B. F. Reynolds, the life tenant, in which the said B. F. Reynolds conveyed to the said railway company a fee simple deed to the said premises, and that the plaintiff and its predecessors in title have been in possession under the said deed, claiming the same adversely to the world, and, therefore, holds the said lands 'freed and discharged from all alleged claims of the defendants and all other persons.' This position is overruled, for the reason that the deed of B. F. Reynolds, the life tenant, could convey no greater interest in the said premises than he had. It is true, that the said conveyance made the entry by the railway company for the purpose of construction a lawful and peaceable entry, and forever saved it from being judged in the light of a trespasser. Were the Reynolds heirs in the case to bring an action to eject the said railway company, upon the theory that it was a trespasser, the said deed would constitute a perfect defense, but the said deed could not have the effect of conveying to the railway company the interest of the remaindermen under the will of the said Bennett Reynolds, Sr., who would take under B. F. Reynolds, the life tenant, but under the will of Bennett Reynolds, Sr.; and this being so, no deed or contract of B. F. Reynolds, the life tenant, could divest them of their interest under the said will.

"(c) The plaintiff alleges, in the third place, that the defendants, other than the defendant, T. C. Turner, acquired only a contingent remainder interest in the said McGee tract of land, and that they, therefore, did not have any such interest as was subject to condemnation at the time the road-

bed was located and constructed, and are not now entitled to have any assessment made of damages or compensation because of the possession of the strip of land by the said Greenwood, Laurens and Spartanburg Railway Company, or its successors in interest.

"It is necessary to consider in this case whether the defendants, the Reynolds heirs, under that clause of the will of Bennett Reynolds, Sr., affecting this property, and which is as above set forth, take as contingent remaindermen or a vested but defeasible interest. To sustain the view that their interest is a vested but defeasible one, see the cases of *Rivers* v. *Fripp,* 4 Rich. Eq., 277; *Boykins* v. *Boykins,* 21 S. C., 530. In either event, I am satisfied that they are entitled to compensation. See *Cureton* v. *Railway Company,* 59 S. C., 37.

"(d) The fourth reason why the Reynolds heirs are not entitled to compensation, stated in the complaint, is that it was their duty, having full knowledge of the fact that the Greenwood, Laurens and Spartanburg Railway Company had taken possession of the said strip of land for the purpose of surveying and locating its road thereon, immediately to have instituted their proceedings for the assessment of their damages or compensation by reason thereof, and that their failure to do so for the term of twelve months from the completion of the said road constitutes now a complete bar to their alleged rights. It is a well recognized principle of law that the statutes of limitation or doctrine of prescription do not run against persons until their right of action accrues. Had the remaindermen under the said will of Bennett Reynolds, Sr., instituted their condemnation proceedings under the statute, I think that the railway company would have had a perfect defense, in that it could claim that the said action on the part of the said remaindermen was premature. It could not be ascertained *who* would be entitled as remaindermen under the said will until the death of the life tenant, and, therefore, the Court could not tell who would be entitled to compensation until that time. See *Thomas* v. *Poole,* 19 S.

C., 324.   As to what might have been the effect had the rail-
way company at that time instituted its proceedings under
the statute, making the life tenant and all parties *in esse*
parties to the said proceedings, it is unnecessary here to
consider.   The fact is, they did not avail themselves of this
remedy.

"(e) The fifth ground alleged in the complaint is that the
Reynolds heirs are now estopped by their *laches* from insti-
tuting the said proceedings.   If, as a matter of law, they had
no right to maintain their action until the death of the life
tenant, as I have already held, then it is difficult to conceive
how they could be estopped by their failure to do that which
under the law they were not permitted to do.   All of the
exceptions, therefore, of the plaintiff to so much of the mas-
ter's report as allege error in the master in concluding that
the defendants, other than the defendant, T. C. Turner, were
entitled to compensation, are hereby overruled and the find-
ings of fact and conclusions of law on the part of the master
with reference thereto are hereby affirmed.

"2.   Did the master err in holding that the defendant peti-
tioners could not recover their damages under the statutory
proceedings which they had instituted?   Several cases have
been decided by the Supreme Court of this State construing
this or similar statutes; but, so far as I can find, no case lays
down the practice to be pursued after it is decided finally that
the petitioners in the special proceeding *are* entitled to com-
pensation.   In the case of *Greenville* v. *Mauldin*, 64 S. C.,
page 438, it is decided that where condemnation proceedings
have been instituted in advance of an admission or adjudica-
tion of liability on the part of the respondent in the special
proceedings to enjoin the petitioner from proceeding under
the statutory remedy and the complaint alleges that the
respondent had never admitted its liability, and that such
liability had never been adjudicated by a court of competent
jurisdiction, and to sustain such allegation facts are alleged,
which facts the Court holds on demurrer to the complaint are
insufficient to sustain the plaintiff's denial of liability; but,

on the other hand, show that the plaintiff is liable, that the complaint will be dismissed and the petitioner allowed to proceed under his statutory remedy to have his damages assessed.    If this be so, then it seems to me that where facts are alleged in a complaint by reason of which alone the plaintiff denies liability, and upon the strength of this, petitioner in condemnation proceedings·is enjoined from taking further steps thereunder until his right to condemnation is adjudicated, by a court having jurisdiction; and the Court determines that the plaintiff's grounds are insufficient, and that the defendants are entitled to compensation, the case becomes closely assimilated to the Mauldin case, in which the Court, after dismissing the complaint, permitted the petitioner to proceed to have his damages assessed under the statutory proceeding.    The petitioners, in the first instance, had a right to assume, if as a matter of law they were entitled to compensation, that the railway company would not dispute this right.    They were not bound to assume that the railway company would deny its legal liability, and acting upon that assumption refrain from instituting the only proceeding which the law authorizes to assess damages in cases like this. Acting, therefore, upon what appeared to be the reasonable and proper assumption, the petitioners instituted their proceedings under the statute.    A jury was drawn as authorized.    Just at this state the railway company comes in and says, 'I am not liable in damages, for the reason alleged in my complaint.  ·Your jury authorized under the special statute have no right to pass upon this question, and the matter will have to stop here until a court of competent jurisdiction does pass upon my legal liability.'    It was, therefore, proper for the railway company to institute its action to enjoin the jury in the condemnation proceedings from passing upon the question of the petitioner's legal right to damages until adjudicated.    Therefore, Judge Gage was right in holding, 'I am of the opinion that the injunction to the clerk and these proceedings should continue *until this* action

is tried, or until the further order of the Court' (italics
mine).

"This action has been tried, and it is my opinion that the
petitioners in the special proceedings are entitled to compen-
sation; that the plaintiff herein has failed to make good its
charge in its complaint that it is not legally liable. The
order for temporary injunction should be, and is hereby, dis-
solved. This being so, there is no longer anything in the
way of petitioners to have their damages assessed under the
special proceedings instituted by them. In other words, the
injunction heretofore obtained only enjoined, in effect, the
jury in condemnation proceedings from passing upon the
legal liability of the plaintiff. The injunction has, therefore,
served its purpose, and is *functus officio;* the Court did not
purport to, and in my opinion could not, enjoin the taking of
only one step in that proceeding, to wit: the adjudication of
the question of legal liability on the part of the plaintiff.
That step having been enjoined, and the Court in the mean-
while having determined that the railway company is liable,
the jury in the condemnation proceedings is the only tri-
bunal authorized by law to assess the damages.

"It is, therefore, ordered, that the exceptions of the de-
fendants to so much of the master's report as recommends
that they be perpetually enjoined from proceeding under the
condemnation proceedings instituted by them, be, and the
same is hereby, sustained, and to that extent the master is
reversed. The case will, therefore, proceed just as though
the order for temporary injunction had never been obtained."

From this decree the plaintiff appeals.

*Mr. S. J. Simpson,* for appellant, cites: *Who was the
"owner" under the terms of the statute?* 21 S. C., 430. *De-
fendants took contingent remainders under will here:* 26 S.
C., 450. *Defendants have lost any right they may have had
to compensation by waiting more than one year after com-
pletion of road:* Gen Stats., 1550, 1551, 1558; 16 S. C., 426;

19 S. C., 324; 28 S. C., 388; 58 Ky.; 15 Rich., 198; 7 Ency.
P. & P., 512.   Ten years after record of deed barred re-
maindermen: 3 Strob. Eq., 359; 32 N. E. R., 384; 10 Gratt.,
363; 58 S. C., 532.

Messrs. Johnstone, Welch & McGhee, contra, cite: Pre-
liminary survey is not a taking: 3 Elliott on R. R., 1423.
Defendants are entitled to compensation: 59 S. C., 375;
Pierce on R. R., 164, 165, 177.   The interest of defendants
is a vested fee defeasible: 4 Rich. Eq., 277; 21 S. C., 530.
Statutory proceeding is proper remedy for defendants: 38
S. C., 313; 64 S. C., 438.   Defendants could not seek com-
pensation until death of life tenant: 38 S. C., 38.

July 30, 1904.   The opinion of the Court was delivered
by

MR. CHIEF JUSTICE POPE.   The defendants, except T. C.
Turner as clerk, under a claim based upon the third clause
of the last will and testament of Bennett Reynolds, the
elder, to the McGhee tract of land, containing 264 acres,
through which the track and road-bed of the Charleston and
Western Carolina Railway Company was located, after the
death of B. F. Reynolds, which occurred in the month of
May, 1901, who by said third clause of the last will and
testament of Bennett Reynolds, the elder, was given a life
estate in said lands, presented their petition in the Court of
Common Pleas for Greenwood County, in said State,
wherein they prayed that under the laws of this State (regu-
lating the proceedings whereby a railroad company could
secure a right of way over lands and locate its track and
road-bed thereon) they were entitled to have a jury assess
their damages against said railway company as compensation
for said track and road-bed over their lands.   His Honor,
Judge Townsend, granted the usual order, referring it to T.
C. Turner, Esq., as clerk of the Court of Common Pleas for
Greenwood County, in this State, to give notice to the plain-
tiff railway of the date and place when and where said clerk

would impanel a jury to pass upon the assessment to be made for the defendants against the said railway company for the use of said defendants' lands with and by its track and road-bed. Whereupon the said plaintiff, the Charleston and Western Carolina Railway, brought its action against these defendants, asking that the Court would perpetually enjoin the defendants, now and at all times thereafter, from endeavoring to have any assessment made against the railway company for the right of way through the lands aforesaid. On the 18th day of October, 1901, Judge Gage granted a preliminary injunction against the defendants, and ordered that the rights of the parties be determined in this action. By an order, consented to by all parties, the issues of law and fact were referred to William J. Moore, as master for Greenwood County, in this State. By his report he found against the right of the railway company, but also found that the defendants would have to bring their separate action against the railway company to have their damages assessed. Both sides to this controversy appealed from the report of the master, and upon the hearing had before the Honorable Joseph A. McCullough, as special Judge, he decreed that the master was correct in holding that the defendants had a right to have their damages assessed, and he held that the master was incorrect in holding that the defendants could not have their damages assessed in and under the statutory proceedings which had been enjoined by Judge Gage. He, therefore, sustained so much of the master's report as found that the defendants were entitled to damages from the railway company for the right of way over their lands, but overruled the other part of the master's report.

The plaintiff now appeals from the whole decree of special Judge McCullough on the following grounds, alleging error:

"I. In finding and holding that the work of constructing the G. L. & S. Railroad across the land involved in this case was not begun until after the death of Bennett Reynolds, Sr.; when, as we submit, the evidence shows that prior to the death of the said Bennett Reynolds, Sr., the said railway

company had finished the survey and location of its road, and had taken possession of said land therefor by making the final location of its said road, and staking it out with proper stakes, showing the width and depth of the grading to be done thereon.

"II. In not finding and holding that said work was a step in the construction of said road, and that such construction had been begun before the death of the said Bennett Reynolds, Sr., he and all persons claiming under, by or through him, have been long since barred by the statute of limitation, applicable to such cases, from asking any compensation for the land so taken.

"III. In not holding, under the evidence in this case, that the possession by the railway company for the purpose of final location, staking out and construction, was with the knowledge and consent of the said Bennett Reynolds, Sr., and amounted to the giving by the said Bennett Reynolds, Sr., of a right of way through his land.

"IV. In not holding that the conveyance of B. F. Reynolds to the Greenwood, Laurens and Spartanburg Railroad Company gave a right of way through the said land, which has come to this appellant through successive transfers, and which gives to this appellant now the right to hold said lands against the said B. F. Reynolds, and all other persons claiming under the will of Bennett Reynolds, Sr.; and further, that all such persons are now barred and estopped thereby from asking compensation from the Charleston and Western Carolina Railway Company for the said land or right of way.

"V. In not finding and holding that the defendants in this case, other than T. C. Turner, did not have—when the Greenwood, Laurens and Spartanburg Railroad Company took possession of the strip of land mentioned in the complaint herein—any such interest therein as entitled them to be called *owners* thereof in any sense, or to any compensation by reason of the said railway company's right of way over said lands; and in not, therefore, holding that it was

not necessary or proper under the laws of the State of South Carolina for the said railway company to have condemned the interest of any or all such parties in the said lands.

"VI. In holding that the said defendants, respondents, took a fee defeasible interest in the said lands;' and in not holding that their interests therein were contingent remainder interests, and not such interests as entitled them then, or at any time since, to compensation for the use of the said lands or right of way.

"VII. In holding that the defendants, respondents, herein were not bound and did not have the right to institute proceedings under the statute, for compensation, when the Greenwood, Laurens and Spartanburg Railroad Company went into possession of the said lands, and that they could not do this until the death of B. F. Reynolds; and that they are, therefore, not barred from asking compensation, by the statute of limitation of South Carolina, which fixes twelve months within which such compensation or damages can be had.

"VIII. In not holding that as the evidence shows the defendants, respondents, herein were adults when the possession of the said land by the Greenwood, Laurens and Spartanburg Railroad Company began, and as they had full knowledge of such possession, they had the legal right, and the duty was on them then, to take steps under the statute for the recovering damages or compensation because of the taking of the said land; and that by their failure to do so for twelve months, they became and have ever since been barred by the terms of the statute then of force, fixing that time as the limit beyond which such damages or compensation could not be asked, from asking at any time thereafter any such damages or compensation because of such taking of said land.

"IX. In holding that the defendants, respondents, herein would not have had the right to institute condemnation proceedings under the statute, prior to the death of B. F. Reynolds, because it could not then be ascertained who would

be entitled as remaindermen to the compensation or damages that might have been fixed in such condemnation; and in not holding under the statutes of the State of South Carolina, then and now of force, all condemnation proceedings involve and contemplate only one taking of lands sought to be condemned; and that on such condemnation the rights and interests of all persons interested to any extent, and by whatsoever title or claim in such lands, are cut off, and any and all such persons are remitted to the condemnation fund paid by the party condemning such lands, and in not holding that for this reason the defendants, respondents, herein were then bound under the statute to have the said land condemned, and to assert their interest in the fund raised thereby; and having failed to do so for twelve months after the beginning of the construction of said railroad, they are now barred from asking or asserting any such claim against any of the successors in title of the said Greenwood, Laurens and Spartanburg Railroad Company.

"X. In holding that defendants, respondents, were not barred by their *laches* and estopped by their conduct from instituting the proceeding sought to be enjoined herein, and in not holding that because of such conduct, and their very great delay in instituting such proceedings, they are now barred and estopped from asking any such relief.

"XI. In not holding that the possession of the Greenwood, Laurens and Spartanburg Railroad Company of the said lands, when it began and during its continuance, was as of a fee simple title therein, under color of title thereto, and that such possession was continued, open, adverse and notorious for more than ten years; and that by such possession, irrespective of all other claims and rights, the said railway company acquired a title to the said premises that cannot now be interfered with by the said defendants, respondents, or any other persons, and that the Circuit Judge erred in not so holding, and in not granting perpetual injunction to the plaintiff as prayed for.

"XII. In not finding and holding that the plaintiff and

its predecessors in title had acquired by twenty years use a prescriptive right of way over said lands, which cannot now be interfered with by the defendants, respondents, or any other persons.

"XIII. In not finding and holding that if, on no other ground, the plaintiff herein is entitled to perpetual injunction restraining the defendants from continuing the statutory proceedings sought to be enjoined, for the reason that, when statutory proceedings was begun, this plaintiff had denied and continued to deny the right of defendants to compensation or damages; and that this being true, said defendants had no right to institute such proceedings for the purpose of fixing any such damages or compensation.

"XIV. In not holding that the single fact of the denial by the plaintiff of the defendants' right to compensation was, and is, sufficient to make the statutory proceedings instituted by them for the assessment of damages improper and illegal, until they shall have first established the right to such compensation in some other and independent action or proceeding, and in not, therefore, sustaining plaintiff's claim to a perpetual injunction.

"XV. In not at least finding and holding that the defendants should be enjoined from asking compensation under the statutory proceeding begun by them except for the value of the land taken, as of date when the Greenwood, Laurens and Spartanburg Railroad Company took possession of the same, and the extent of the then interest of defendants therein, to wit: their contingent remainder interest therein, or such other interest as they had therein, and in not perpetually enjoining the defendants from asking compensation."

We will now undertake to pass upon these exceptions by groups; but to thoroughly understand the application of the same to the master's report and the decree of the Circuit Judge, we think it necessary that the report of the case should contain a copy of said master's report and the Circuit decree.

We will now pass upon the first, second and third exceptions. It is well to remember just at this point that the statutes of this State regulating the mode of railroads in acquiring a right of way over the lands of another, definitely announce in section 2196 of Civil Code of South Carolina, volume 1: "Nothing herein contained shall be construed to prevent entry upon any lands for purposes of survey and location." It will thus be seen that in the year 1882 and in the year when several preliminary surveys were made over the tract of land known as the McGhee tract belonging, up to July, 1883, to Bennett Reynolds, the elder, it was in the power of the railway to go upon said lands "for the purposes of survey and location," without the permission of said Bennett Reynolds, the elder. The testimony is convincing that no notice was ever served upon Bennett Reynolds, the elder, that the railway company proposed to locate a right of way over his McGhee tract of land, and it is also convincing that the railway company never began to construct their track or road-bed upon said lands until after October, 1883. Bennett Reynolds died in July, 1883. Mr. T. F. Riley, who obtained the right of way for the railway company, testifies that he did not apply to Bennett Reynolds, the elder, for the right of way, because he was dead, but that he did apply, on the 13th October, 1883, to B. F. Reynolds for such right of way, and received from him on that day a deed for said right of way over the McGhee tract of land. The conviction is forced upon our minds that the testimony does not support these exceptions, and they are overruled.

We will now consider the fourth exception. Not only was B. F. Reynolds living on the McGhee tract of land during the last year or so of the life of his father, Bennett Reynolds, the elder, but by the will of Bennett Reynolds, the elder, the world was advertised that he, B. F. Reynolds, held the McGhee tract of land for and during his natural life and no longer. So, therefore, when the railway company took his deed for the right

of way in question, it acquired by said deed what estate the said B. F. Reynolds had in said lands. This Court has recently passed upon the matter of a railway acquiring a right of way from a life tenant, in the cases of *Cureton* v. *Ry. Co.*, 59 S. C., 371, 37 S. E., 914; *Trimmier* v. *Darden*, 61 S. C., 236, 39 S. E., 373. In both cases the conveyance of such life tenant was confined to the estate he had in the lands. Now, for this Court to hold that the deed of the life tenant to said lands would operate, under the testimony adduced at the trial, beyond the death of B. F. Reynolds (who died in May, 1901), so as to defeat the right of the children of B. F. Reynolds, under their grand-father's will, would be advancing an incorrect proposition. When Bennett Reynolds, the elder, clothed his son, B. F. Reynolds, with only a life estate in the McGhee tract of land, by the same will he clothed his grand-children, named as defendants here, with the fee simple estate of said lands; and how this Court, in its hearing of the exceptions to the decree of Judge McCullough, can ignore the constitutional provision that private property shall not be taken by railroads from the owners thereof without first making compensation to such owners, we cannot see. This exception is overruled.

We will next examine the fifth exception. We have already held that the railway company first entered upon the McGhee lands for the purpose of appropriating to themselves a right of way over said lands three and one-half months after the death of Bennett Reynolds, the elder. Therefore, whatever interest B. F. Reynolds and these defendants acquired in said lands was vested in them by the will of Bennett Reynolds, the elder, for three and one-half months before this railway company asserted their right of way over said lands. B. F. Reynolds had only a life estate. These defendants had their possession of said McGhee lands *postponed* only till after the death of B. F. Reynolds. Their title to said lands was immediate upon the death of Bennett Reynolds, the elder, with the right of possession postponed. The railway company served no notice upon any one of the

defendants that it would require so much of their lands as were necessary for a right of way. This exception is overruled.

We will next consider the sixth exception. The language of the will of Bennett Reynolds, the elder, was as follows: "3. I devise and bequeath unto my son, Benjamin Franklin Reynolds, all that tract of land on which he now resides, * * * to have, use and enjoy the same during said B. F. Reynolds' natural life, at his death to his children or their children who may be living at that time." As B. F. Reynolds only had a life estate, who had the fee cast upon them by the death of Bennett Reynolds, the elder? It must vest in some one. By section 2483 of the Civil Code of South Carolina, volume 1, it is provided: "No words or limitation shall be necessary to convey an estate in fee simple by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, expressed or implied." The children of B. F. Reynolds were *in esse* at death of testator. So this provision of the will gives to the children of B. F. Reynolds a fee simple estate in the tract of land. Title vested in them, as before remarked, on the death of testator, but possession postponed until the death of B. F. Reynolds. The Circuit Judge suggested that it might be a vested fee defeasible, citing *Rivers* v. *Fripp,* 4 Rich. Eq., 277, and *Boykin* v. *Boykin,* 21 S. C., 530, in support of the proposition. We think, however, that the authorities in our State support the proposition that the defendants took as contingent remaindermen. *Faber* v. *Police,* 10 S. C., 376. This exception is, therefore, overruled.

We will next examine the seventh, eighth and ninth exceptions. Appellant states the question presented by these exceptions to be, "Whether or not, assuming that the respondents had such interests in these lands as could be condemned, they have lost their right to compensation therefor by failing within twelve months from

the completion of the road to ask compensation as provided by the statute." The sections of the Civil Code of South Carolina, volume 1, 2187 (1550 of Gen. Stat. of 1882); 2188 (1551 of Gen. Stat. of 1882), and 2196 (1558 of Gen. Stat. of 1882), appear in General Statutes as follows:

"1550. Whenever any person or corporation shall be authorized by charter to construct a railway, canal, turnpike or other public highway, in this State, such person or corporation, before entering upon any lands for the purpose of construction, shall give the owner thereof (if he be *sui juris*) notice, in writing, that the right of way over said lands is required for such purpose, which notice shall be given at least thirty days before entering upon said lands; and such notice shall be served upon such owner in the same manner as may be required by law for the service of the summons in civil actions. If the owner shall not, within the period of thirty days after service of said notice, signify, in writing, his refusal or consent, it shall be presumed that such consent is given; and such person or corporation may thereupon enter upon said lands: *Provided, however,* That the owner of said lands may be entitled to move for an assessment of compensation in the manner hereinafter directed.

"Sec. 1551. If the owner of said lands shall signify his refusal of consent to entry upon his lands, without previous compensation, the person or corporation requiring such right of way shall apply, by petition, to the Judge of the Circuit wherein such lands are situated for the empanelling of a jury to ascertain the amount which shall be paid as just compensation for the right of way required, in which petition shall be set forth a description of the lands, the names of the owners, the purposes for which the lands are required, and such other facts as may be deemed material. On the hearing of such petition, the Circuit Judge shall order the same to be filed in the office of the clerk of Court of Common Pleas for said county, and shall further order the clerk of the Court to empanel a jury of twelve to ascertain the compensation for the use of the lands required; and it shall be

the duty of said clerk, immediately on receiving such order, to give the owner of the lands notice thereof, in writing, and of the day which shall be assigned. On the day assigned, the said clerk, in the presence of the parties, if they shall attend, shall select the names of twenty-four disinterested freeholders of the county, and from that number shall draw the names of twelve to act as jurors, and shall cause those so drawn to be forthwith summoned to meet at such place and at such time as he may assign, for the purpose of examining said lands, and ascertaining the compensation to be made for the right of way over the same; it shall further be the duty of said clerk, in person or by his deputy, to attend at the same time and place for the purpose of organizing the jury; and he shall have power to summon from the vicinage other disinterested freeholders to act as jurors in the stead of any of those first summoned who shall fail to attend, or who shall be objected to by either party on the ground of disqualification on account of interest. * * *

"Sec. 1558. Nothing herein shall be construed to prevent entry upon any lands for the purposes of survey and location; and if in any case the owner of any lands shall permit the person or corporation requiring the right of way over the same to enter upon the construction of the highway without previous compensation, the said owner shall have the right, after the highway shall have been constructed, to demand compensation, and to petition for an assessment of the same in the manner hereinbefore directed : *Provided,* Such petition shall be filed within twelve months after the highway shall have been completed through his or her lands."

We see that the appellant labors under a mistake. He refers in his argument to what he says is a fact, viz : that all these defendants were adults at the time this right of way was conveyed by the deed of the life tenant in October, 1883. This is a groundless assumption in this case, for the master in his report sets up as a fact that the ages of these defendants were from forty years to twenty-four years at the time of his report, April 28, 1903, from which it follows that all the

defendants were minors at the time of the construction of
the railroad.    This finding was not excepted to, and is, there-
fore, binding upon all the parties to this action.    It seems
to us that this statutory remedy as to rights, duties and lia-
bilities of railroads and private parties, as well as corpora-
tions, in the matter of rights of way, as to those falling
within the statute, is exclusive of any other methods to
secure rights of way over the lands of another; and, further,
that if this scheme of the law is upheld by this Court, the
defendants, respondents, who may fall without the condem-
nation statute, have lost their cause, and the Circuit Judge
would be in error; for certainly the proviso to section 1558
declares: *"Provided, such petition shall be filed within twelve
months after the highway shall have been completed through
his or her lands."*    It is a fact, not denied in this action, that
this right of way was acquired through the life tenant in the
year (October) 1883, and that the railway was completed in
1884.    This proceeding on the part of the defendants was
begun in October, 1901—certainly far longer, in point of
time, than twelve months after the railway was completed.
The Circuit Judge decreed that the right to have the com-
pensation assessed to the defendants now exists and shall be
enforced in the method as set out in the statutes of our State
regulating obtaining rights of way.

Let us examine with care the law as settled by our de-
cisions in this State.    It should be conceded that in this case
the plaintiff railway was not a trespasser upon the McGhee
tract of land, for it entered said land under a deed made to
the railway for a right of way thereover by the life tenant,
B. F. Reynolds.    *Tompkins* v. *R. R. Co.,* 2 S. C., 421;
*Cureton* v. *R. R. Co.,* 59 S. C., 377, 37 S. E., 914.    It must
also be conceded that the railway company caused no notice
of their intended entry upon said land to construct their rail-
way to be served upon the defendants or any one of them.
It must also be conceded that the plaintiff railway now denies
that the defendants have any right to compensation for the
right of way over their lands.    Under these circumstances,

what do our decisions establish to be the law applicable here? In the case of *R. R. Co.* v. *Ridlehuber,* 38 S. C., 308, 17 S. E., 24, after a pains-taking statement of the provisions of the statute law of this State as to condemnation proceedings governing the obtaining of rights of way over the lands of others by railroads, Chief Justice McIver, as the organ of this Court, said: "From this brief review, it seems to us obvious that while a special mode of proceeding has been prescribed for ascertaining *the amount* of compensation to which the land owner, in a case like this, shall be entitled, where the *right* to compensation is either conceded or has been already determined, there is no mode prescribed by which such right can be tested when it is denied."

Next in order was the case of *Cureton* v. *R. R. Co.,* 59 S. C., 371. In this case it was held that when a railroad company serves notice on a land owner that it requires a right of way through his land, and notice in writing refusing such consent is served on the company and it takes no steps to condemn, the owner may bring an action to try his right to and amount of compensation. In this case the case of *R. R. Co.* v. *Ridlehuber, supra,* was affirmed. See, also, *Glover* v. *Remley,* 62 S. C., 56, 39 S. E., 780.

Next in order is the case of *R. R. Co.* v. *Burton,* 63 S. C., 348, 41 S. E., 451. In this case the right of the land owner to compensation for injuries to the defendant by right of way of the railroad was denied by the railroad. Held, that such disputed *right* was first to be tried, and that condemnation statutes of this State do not furnish a method of trying that right. Affirming *R. R. Co.* v. *Ridlehuber, supra.*

By these authorities it is established in this State that where the right of compensation to a land owner for a right of way over his lands is denied by a railway company wishing such right of way, that the statutes of this State providing the machinery for determining the compensation to be paid for such right of way do not provide any means to try the right. But our Court of Common Pleas, having a general jurisdiction, has the power to try such right. *Cure-*

ton v. R. R. Co., supra; R. R. Co. v. Burton, supra.    Thus
it is made manifest that the land owner is not dependent
alone upon the condemnation statutes, for if the railroad
denies his right to condemnation and he does not fall within
the terms of such condemnation statutes, he may have his
right tried elsewhere.

In this case the railroad denies the right of condemnation,
and in an action set in motion by the railroad itself, that
right has been decided to exist.    Inasmuch as defendants'
right to compensation was denied, and inasmuch as they
were minors at the time of the construction of the railroad
and could not give consent to entry for construction, it is
clear that the case of defendants does not fall within the
condemnation statutes, and it must follow that the time
within which proceedings for condemnation must be com-
menced has no application to defendants' case.    We over-
rule the exceptions of appellant, and affirm the conclusion
of the Circuit Judge.

We will say further, relating to the mode of proceeding
in the ascertainment of the compensation to be paid the land
owners: The Circuit Judge, in his decree herein, orders that
such compensation be ascertained under the method laid
down in the condemnation statutes, to wit: before the clerk
of Court and a jury of twelve men.    We see no error in
this method of procedure.    It was that virtually adopted
by the Court in R. R. Co. v. Burton, supra.    It has also the
sanction of the case of City Council of Greenville v. Mauldin,
64 S. C., 433, 25 S. E., 200.    It was competent for the
court of equity, having acquired jurisdiction of the case,
to render full relief by providing for the assessment of com-
pensation by the ordinary methods, but it is a convenient
and expeditious mode of procedure, after determining the
right of compensation, to use the machinery provided in the
condemnation statute.

Appellant in the tenth exception claims that defendants
are barred by laches in the assertion of their rights.    These
rights occurred in May, 1901, and they brought a proceed-

ing in October, 1901. What we have already held is a sufficient answer to this exception. It is overruled.

We will now examine exception eleven. Railways do not obtain a fee simple title to lands under condemnation proceedings. The deed of B. F. Reynolds was not under those statutes. He had only a life estate, and he could convey no more. This exception is overruled.

We will now examine exception twelve. The occupation of land under a deed from a life tenant does not allow such occupation to be a shield against the rights of remaindermen immediately after the death of life tenant. This exception is overruled.

We will now pass upon exceptions thirteen and fourteen. The defendants could not know in advance of their proceedings against the railway company that their right to compensation would be denied. It was a proper order of Judge Gage until the question of *right* could be determined. Such, we think, was the practice approved of in one of the late cases decided by this Court—*R. R. Co.* v. *Burton, supra; R. R. Co.* v. *Ridlehuber, supra.* These exceptions are overruled.

Lastly, we will pass upon the fifteenth exception. The Court is of the opinion that in the assessment by the jury of the compensation to be paid to the defendants for the right of way over their lands, the value of defendants' contingent remainder in such right of way must be ascertained as it existed in October, 1883, when construction of the railroad began, and that compensation be allowed on such valuation, with interest from such date.

It is the judgment of this Court, that the judgment of the Circuit Court be and is hereby affirmed.

MR. JUSTICE JONES. I concur, understanding that the manner of compensation to be allowed is the value of defendants' contingent remainder at the time of taking, with interest.

Mr. Justice Woods, *concurring.* Some time in 1882, the Greenwood, Laurens and Spartanburg Railway Company made entry upon a tract of land in Abbeville, now in Greenwood, County, known as the McGhee tract, containing 260 acres, more or less, the property of Bennett Reynolds, Sr., for the purpose of surveying and locating its railroad thereon. Bennett Reynolds, Sr., died July 3, 1883, leaving of force a will by which he devised the McGhee tract to his son, Benjamin Franklin Reynolds, for life, and "at his death, to his children or their children who may be living at that time." No conveyance having been obtained by the railway company from Bennett Reynolds, Sr., on October 13, 1883, B. F. Reynolds, Jr., the life tenant, by his deed conveyed to the railway company a right of way two hundred feet wide through the lands, along the line of which the road was subsequently constructed. No notice of entry for construction was served upon the children of B. F. Reynolds, Jr. This right of way has been used continuously ever since by the Greenwood, Laurens and Spartanburg Railway Company and its successors. B. F. Reynolds, Jr., the life tenant, having died May 30, 1901, on October 11, 1901, the defendants, J. B. Reynolds, Emma R. Reynolds, F. B. Reynolds, Eva Reynolds and W. T. Reynolds, his only children, claiming the McGhee tract as remaindermen under their grandfather's will, presented a petition in the Court of Common Pleas for Greenwood County, praying the Court to have assessed, under the condemnation statute, the amount of compensation and damages to which they were entitled for the use of said strip of land by the Charleston and Western Carolina Railway Company, the successor of the Greenwood, Laurens and Spartanburg Railway Company. Upon hearing the petition, Judge Townsend granted the usual order, directing the clerk of Court to proceed to empanel a jury to ascertain the amount of compensation and damages that should be paid by the defendant railway company to the petitioners. The clerk of Court gave due notice of the filing of such order, and fixed a day for making the assessment.

The plaintiff, the Charleston and Western Carolina Railway Company, denying the right of the Reynolds heirs to have the assessment made, then brought its action to have them and the clerk of Court perpetually enjoined from going further with the said proceedings, and, pending the determination of the issues, for a temporary injunction to stay proceedings under the petition. On October 18, 1901, a preliminary injunction was granted by Judge Gage, and at a subsequent hearing on November 1, 1901, he ordered that the injunction should continue until the action was tried, or until the further order of the Court. By the consent of all the parties, the cause was referred on December 19, 1902, to W. J. Moore, master for Greenwood County, to take the testimony and to report his findings both of law and fact. The master found that the claimants were entitled to compensation for the use of the lands by the railway company, but that they could not recover under the statutory proceedings, solely on the ground that the right was denied; and recommended that further proceedings under the statute be permanently enjoined, but without prejudice to the rights of the claimants to bring a separate action against the Charleston and Western Carolina Railway Company for the assessment of compensation and damages. Both sides excepted to the master's report, and the cause came on to be heard on the exceptions before Hon. Joseph A. McCullough, special Judge, at a special term of the Court of Common Pleas for Greenwood County. In his decree, filed June 4, 1903, Judge McCullough sustained the finding of the master that the Reynolds heirs were entitled to compensation, but overruled his finding that they were not entitled to recover under the statutory proceedings; and adjudged that the case should proceed as though the temporary injunction had never been obtained. From this decree the plaintiff has appealed, and by his exceptions asks, in effect, that the following propositions be sustained:

1. That the construction of the railroad of the Greenwood, Laurens and Spartanburg Railway Company across

the lands in question was begun during the lifetime of Bennett Reynolds, Sr., with his knowledge and consent, and that this amounted to his giving a right of way over them, and all persons claiming under him are barred by the statute of limitations of twelve months provided by the condemnation statute, section 2196, Civil Code, and applicable to such cases.

2. That the conveyance of the right of way over said lands by B. F. Reynolds, Jr., the life tenant, gave to the railway company a good title against all parties claiming under the will of Bennett Reynolds, Sr., which title has been transferred to the plaintiff in this action.

3. That B. F. Reynolds, Jr., did not take a fee defeasible, but the remainders were contingent, and the remaindermen had no such interest in the said lands as to entitle them to be called *owners,* or to give them the right of compensation for the use of the same by the railway company, and, therefore, it was not necessary for the railway company to condemn their interests.

4. That under the statute of this State, upon the condemnation of lands, all the rights and interests whatsoever of all persons interested in such lands are forever cut off, and all such persons are remitted to the fund paid by the party condemning such lands, and that for this reason the defendants, as contingent remaindermen, had the right, and were bound, to institute proceedings, under the statute, for compensation within twelve months after the Greenwood, Laurens and Spartanburg Railway Company went into possession, and that their action is barred by reason of their delay until after the death of B. F. Reynolds, Jr.

5. That the defendants were adults when the Greenwood, Laurens and Spartanburg Railway Company took possession of said lands, and being fully aware of such possession, it became their legal duty to institute proceedings for compensation against said railway company within twelve months, and failing in this, they are barred by the statute.

7. That the Greenwood, Laurens and Spartanburg Rail-

way Company acquired title by adverse possession of the strip of land in dispute, and that twenty years continuous use by it and its successors has given them a prescriptive right of way that cannot be disturbed.

8. That·plaintiff's denial of defendant's right to compensation and damages made their proceeding to assess them improper and illegal, until such right should have been established in an independent action or proceeding.

9. That in any event the defendants could recover compensation only for the value of their contingent interests in the land when the Greenwood, Laurens and Spartanburg Railway Company took possession of them, with interest from the date of the taking.

Bennett Reynolds, Sr., gave no express permission that the railroad should be constructed over his land, and it is clear from the evidence that the company did not begin to construct its road over the lands in his lifetime, but only surveyed and located the route, and hence the permission to construct, referred to in section 2196 of the Civil Code, cannot be inferred from his inaction or silence. It follows that the provision of that section, which requires the owner of land who permits the construction of the railroad over his land to be entered upon, to file his petition for compensation within twelve months after the completion of the road, had no application at the time of the death of Bennett Reynolds, Sr. The first, second and third exceptions should, therefore, be overruled.

Under the will of Bennett Reynolds, Sr., his son, B. F. Reynolds, Jr., took a life estate in the land, with remainder to his children and grand-children, the interest of each being contingent upon surviving B. F. Reynolds, Jr. The remainder was, therefore, contingent. *Faber* v. *Police,* 10 S. C., 376.

The appellant·insists in its fourth, fifth and sixth exceptions, that it follows from this construction of the will that the conveyance of the right of way by B. F. Reynolds, Jr., the life tenant, barred the rights of the remaindermen

and all others. It is true, that it was held in *Tutt* v. *R. R. Co.,* 28 S. C., 388, 5 S. E., 831, and *Ry. Co.* v. *Scott,* 38 S. C., 34, 16 S. E., 185, that a life tenant in possession was to be regarded the "owner" referred to in the condemnation statute, and that his deed was sufficient to protect the railroad company against remaindermen and others interested; but upon this question these cases must be regarded overruled by the case of *Cureton* v. *R. R. Co.,* 59 S. C., 371, 37 S. E., 914, where the sounder doctrine is laid down that the life tenant is in no sense empowered to consent to the taking of the interest of the remaindermen or of others interested in the property, or to collect the compensation due to others guaranteed by the Constitution for such taking of their property. The deed of B. F. Reynolds, Jr., therefore, conveyed nothing to the railroad company except a right of way for his lifetime, and had no effect upon the claim of the remaindermen for compensation.

This brings us to the consideration of the most important questions in the case. First. Did the contingent remaindermen have the right, under the condemnation statute, to have the value of their interests in the land taken by the railroad company assessed before such contingent interests had become, by the death of the life tenant, vested fee simple estates, carrying with them the right of possession? Second. If they did have such right, have they failed to exercise it for such length of time as to be barred by any statute of limitations? The first question depends upon the signification given to the term *owner* in the condemnation statute, for it provides that the railroad company may institute proceedings looking to the compensation of the *owner* for taking his land; and when the railroad enters upon construction with the *owner's* permission and fails to condemn then, that the owner may institute like proceedings on his own behalf.

It seems very obvious that the General Assembly in enacting the condemnation statute must have intended to provide a method by which every person interested in the land should

have the value of his interest judicially ascertained and paid for, and that the corporation should be able to obtain a perfect title once for all, and not be forced to have its title clouded and its business, in which the public is interested in so many ways, liable to interruption by future claims to the property. To carry out this design, the broadest and most extensive signification should be given to the term *owner* wherever it occurs in the act, and it should be held to embrace all who have any interest in the land, present or future, vested or contingent—any interest or estate which the law regards of sufficient value for judicial recognition. It takes the sum of all these interests to make the fee, and all must be taken together to constitute full ownership. This is in accord with the broad meaning assigned to the word *land* as used in this statute in the case of *Ross* v. *R. R. Co.*, 33 S. C., 477, 12 S. E., 101. There is no practical difficulty in the separate valuation by the jury of the interest of each part owner of the land.

This view is not inconsistent with any decisions of this Court, except that in *Tutt* v. *Ry. Co.*, 28 S. C., 383, 5 S. E., 381, and others following that case, which, as we have seen, have been practically overruled. In Endlich on the Interprepation of Statutes, at section 96, it is said: "Under statutes providing for compensation to the 'owner' of lands taken for highways, railways, or the like, the term applies to any one having a legal interest in the same, whether his estate be an estate in fee or less than a fee."

There are numerous other authorities sustaining the same view. 3 Elliott on Railroads, secs. 1023, 1025; Pierce on Railroads, 185; Lewis on Eminent Domain, sec. 335; 10 Am. & Eng. Ency. Law, 1194; *Parks* v. *Boston,* 15 Pick., 198; *Watson* v. *N. Y. Central R. R. Co.,* 47 N. Y., 161; *R. R. Co.* v. *Williams,* 54 Pa. St., 109.

The principle is thus strongly stated by Chief Justice Parsons in the case of *Ellis* v. *Welch,* 6 Mass., 251: "Any person having an interest in the land, either as lessee for years, tenant for life, or for any greater estate of freehold, as also

he in reversion or remainder, is an owner, within the provision of this section; because, being within the mischief, he is within the remedy." We, therefore, conclude that the term "owner" in the statutes includes the contingent remaindermen who are the claimants here.

It follows, from this conclusion, that the railroad company could have barred the rights of these contingent remaindermen by making them parties to condemnation proceedings, and further, if they permitted, without compensation, the railroad company to enter upon the construction of the road in the lifetime of the life tenant and failed to institute, on their own behalf, proceedings for compensation within one year after the completion of the railroad, such proceedings would be barred, under section 2196 of the Civil Code. It is not denied that the railroad company did enter upon the construction of the road and that it was completed many years ago. The permission of the owner for entry and construction before compensation would ordinarily be presumed from this state of facts. *Rankin* v. *R. R. Co.,* 58 S. C., 532, 36 S. E., 997. It appears from the record, however, that the claimants were minors when the entry was made and the railroad built, and hence they were incapable of giving any binding permission. The statute allows only two classes of land owners to prosecute condemnation proceedings: (1) those on whom the railroad company has served notice under section 2187 of the Civil Code, and who have allowed the company to enter without signifying their refusal or their consent; and (2) those who, in the absence of the formal statutory notice, have permitted the company to enter upon the construction of the railroad through their lands without previous compensation. These remaindermen never having been served with notice by the railroad company, and having been infants at the time of construction incapable of giving permission to the company to enter, the statute provides no remedy for them, and hence they are not barred by failure to institute proceedings under the condemnation statute within one year after completion of the road through the land.

They really had no remedy except an ordinary action for damages, and this would not be barred until six years after the falling in of the life estate. B. F. Reynolds, Jr., the life tenant, died May 30, 1901, and the six years within which his children, the remaindermen, could have brought their action for damages for the appropriation of their property, under section 112 of the Code of Procedure, has not yet expired.

The foregoing discussion disposes of the exceptions from the fourth to the twelfth, inclusive. The defendants are not, as we have seen, barred by the statutory limitation of twelve months, nor are they barred, if we apply by analogy the limitation of six years provided by the Code of Procedure.

The exceptions do not raise the question that the claimants could not have their damages assessed by a condemnation jury on the ground that they do not fall within either of the classes of land owners above referred to, who are authorized by the statute to prosecute the condemnation proceedings which they have undertaken. Therefore, while I think, as indicated above, that they do not fall within either of these two classes of land owners, and hence should have brought an ordinary action for damages instead of proceeding under the condemnation statute, there is no basis in the exceptions for reversing the decree of the Circuit Judge on this point, and applying the doctrine relating thereto stated in *Cureton* v. *R. R. Co., supra.* In the absence of an exception raising the question, the Court is bound to consider the case as if land owners in the situation of the claimants were allowed to obtain compensation under the statute.

The appellant's next position is that the statutory proceedings instituted by defendants should be perpetually enjoined, because the statute has no application in any case where the right to compensation is denied, and that the method provided by it cannot in such case be used even for the mere ascertainment of the amount after the right to compensation has been determined in another proceeding. The cases of

*Ry. Co.* v. *Ridlehuber, supra,* and *Burton* v. *R. R. Co., supra,* are relied on to support this proposition. Without detailed analysis of the facts of these cases, or the language of the Court, it seems to me they decided nothing more on this point than that the condemnation statute afforded no means of testing the right to compensation, and for that reason an effort by the land owner to obtain compensation under the statute would be enjoined at the instance of the railroad company until the disputed right had been determined. It is true, in *Cureton* v. *R. R. Co., supra,* an ordinary action for compensation was sustained on the ground that the condemnation statute had no application to the facts alleged in the complaint; but in that case it was held that the statute made no provision for proceedings by an owner who had signified his refusal to consent to the taking of his land without previous compensation, in response to a notice from the railroad company, under sections 2187 and 2188 of the Civil Code; and the company having failed to carry on the statutory proceedings looking to the ascertainment of the amount, the owner had no remedy either to establish his right to compensation or to ascertain the amount except to bring his action.

The true principle which I venture to think these decisions lay down is, that in those cases where the procedure provided by the statute is applicable to the ascertainment of the amount, such procedure will be enjoined when the right to compensation is denied until the right is determined in the action for injunction. For example, if the owner of the land should permit the railroad company to enter upon the construction of the road and then file his petition, under the statute, for compensation more than twelve months after the completion of the road, and the railroad company should institute an action to enjoin the proceedings on the ground that the right to compensation was barred by the lapse of time, it would manifestly be unreasonable to hold that the statutory limitation and the statutory proceeding had no application, because the right was denied on account of the limitation prescribed by the statute itself. In such case the

proceeding by the owner would be enjoined until the question in issue should be decided. Having held that the right to compensation exists in this case, there is no ground furnished by the exceptions to refuse to allow the amount of compensation to be determined under the condemnation statute. The thirteenth and fourteenth exceptions should for these reasons be overruled.

The remaining question is, should the compensation to the defendants be measured by the present value of the fee in the land taken, or by the value of the fee at the time the land was taken, or by the value of the defendants' contingent interest in the land at the time it was taken. The defendants' proceeding contemplates the ascertainment, *under the statute,* of compensation for taking their property. Their property which was taken was a contingent interest in the land appropriated by the railroad company. As we have seen, it was that interest which would have been valued if the proceedings had been instituted either by the railroad company or the claimants at that time. They can have no higher right now under the statute than they would have had at that time. It is the ascertainment only that has been postponed. The compensation should, therefore, be based on the value of the contingent interest at the time of the appropriation, October 13, 1883, with interest from that date. This view is fully sustained by authority.

In the leading case of *Parks* v. *Boston,* 15 Pick., 198. Chief Justice Shaw thus states the rule: "The true rule would be, as in the case of other purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed upon. And if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry; and this delay must be compensated by interest. But in other respects the damages must be appraised by the same rule as

they would have been on the day of the taking. * * * The jury was correctly instructed, that in the estimate of damages done to an estate partly taken for the public use, the value of the estate on the day of the taking, was the true value to be taken by the jury in their assessment of the damages." See, also, *R. R. Co.* v. *Woodruff,* 4 Am. St. Rep., 51, and note; *Winona* v. *R. R. Co.,* 88 Am. Dec., note at page 117, and numerous authorities cited; *Stafford* v. *Providence* (R. I.), 14 Am. Rep., 710. The fifteenth exception should, therefore, be sustained, and the measure of compensation should be the value of the defendants' contingent remainder at the time of the taking, October 13, 1888, with interest from that date.

With this modification, the judgment of the Circuit Court should be affirmed.